## No. 10,290.

### MORRIS EDRINGTON vs. LOUISVILLE, NEW ORLEANS AND TEXAS RAILWAY COMPANY.

In an action for damages against a chartered railroad company, to hold it responsible for injury sustained in consequence of a fire alleged to have been occasioned by sparks emitted from one of its locomotives, the law requires the proof: *that* the sparks so emitted were the cause of the ignition and *that,* to all probability, the wrong is the result of the careless use and negligence of the company in not using such proper scientific contrivances and appliances as most effectually arrest the emission of such sparks and prevent consequent harm to property.

Pretermitting the question of burden of proof, on the latter, not only has the plaintiff in this case failed to establish the former, but has the defendant shown physical impossibility for the existence of the fact and exonerated itself from all charge of carelessness and negligence.

APPEAL from the Twenty-sixth District Court, Parish of St. John the Baptist.

*Rost, J.*

*Prentice E. Edrington* for Plaintiff and Appellee:

Every act whatever of man that causes damages to another obliges him by whose fault it happens to repair it. Civil Code of Louisiana. Article 2315.

Every person is responsible for the damage he occasions, not merely by his act, but his negligence, his imprudence, or his want of skill. C. C. Article 2316.

Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of their functions in which they are employed. C. C. Article 2320.

Fire being necessary to run engines, and, being at the same time a dangerous agent, more than ordinary care is necessary from the officers or engineers running and managing the engine. Thompson on Negligence, pp. 168, 153 ; 55 Wis. 106 : 30 Wis. 110.

Edrington vs. Railway Company.

The fact that fires are communicated are evidence of negligence. 1 Redfield on Railroads, p. 467, § 1.

When the evidence shows the destruction of property by sparks emitted from the engine of defendant company, at time antecedent to the destruction of plaintiff's property, the presumption of law, as to negligence, is against defendant. Law and authorities. 9 Nev. 271 ; 55 Wis. 106 ; Thompson on Negligence, p. 153 ; IJ Rorer, p. 802 ; 1 Otto (U. S. S. C.) 454 ; 32 N. Y. 339 ; 42 Ills. 355–58 ; 54 Wis. 140 ; 131 Mass. 469 ; 41 Ind. 228.

Negligence can be proved by circumstantial evidence in cases of fire from locomotives ; and it is not necessary for plaintiff to do more than show such circumstances as lead to the inference of negligence. Wharton on Negligence, § 871 ; Thompson on Negligence, pp. 131–153.

Negligence vel non is a question of fact for the jury to decide.

Negligence in most cases is a mixed question of law and fact, and when there is a conflict as to the time, as to the true state of facts involved, is a question for the jury to decide. 35 Penn. 60 ; 40 Penn. 406 ; 48 Penn. 320 ; 90 Penn. 15.

## *St. M. Bérault* and *Farrar, Jonas & Kruttschnitt* for Defendant and Appellant:

1. In a suit claiming that a damaging fire has been propagated by sparks emitted from the engine of a chartered railway company, the burden of proof is on the plaintiff to show:
(a) That the fire was propagated by sparks emitted from the engine.
(b) That such omission was due to the negligence of the defendant or of its employes.
2. The law never presumes the willful omission of duty from the proof of a fact which in the ordinary course of business may, and does happen from accident, when the party's liability for the consequences of the fact depends not on the nature of his business or me ployment ; but on the fact of his negligence or want of proper care.
3. Whether the burden of proof be upon plaintiff or defendant, all the authorities are unanimous that the negligence which alone will render defendant liable is the omission of such *diligence as good specialists in this department are accustomed to exercise* — the failure to use the best practicable machinery, and every reasonable precaution such as is usual among good engineers ; and the measure of care against accident which will exonerate defendant is that which a person of ordinary prudence and caution would use if his own interests were to be affected, and the whole risk were his own.
4. Under all authorities, if the defendant shows that its engine was, at the time of the fire, equipped with the most effective practical appliances to prevent the escape of fire, was in *good repair, and properly and skillfully managed,* it will not be held liable.
5. In support of the above propositions, we cite the following authorities : Knight vs. Opelousas R. R. Co., 15 Ann. 105 : The Nitro-Glycerine Case, 15 Wall. 537–538 ; Wharton on Negligence, § 868 et seq.: Pierce on Railroads. pp. 437 and 437 ; Redfield on Railways, vol. 1, § 125 et seq., par. 5 et seq.; Angell on Carriers, § 566 ; Shearman and Redfield on Negligence, § 332 ; Wood on Railways, vol. II, § 328 ; Burroughs vs. Housatonic R. R. Co., 15 Conn. 134 ; Phil. and Reading R. R. Co. vs. Yeager. 73 Pa. Stat. 125 ; Reading and Columbia R. R. Co. vs. Lueshaw, 93 Pa. Stat. 452 : Ruffner vs. R. R. Co.. 34 Ohio, 96 ; Sheldon vs. Hudson, etc., R. R. Co., 14 N. Y. 218.
6. The evidence in the case at bar utterly fails to show that the destruction of plaintiff's property was due to fire communicated by sparks from a locomotive of the defendant railway company.
7. If the fire was due to the cause alleged, there is no evidence of negligence on the part of defendant or of its employes.
8. There is abundant affirmative proof that the defendant company exercised all proper care in providing its locomotives. and especially the locomotive which is claimed to have damaged plaintiff, with all proper appliances of the most approved pattern, and that the loco-

motive which is alleged to have caused the fire was in a perfect condition at the time of the fire.

The opinion of the Court was delivered by

BERMUDEZ, C. J.    This is an action to recover from the defendant the value of a barn and contents destroyed by fire, alleged to have been occasioned by sparks emitted from the smoke stack of one of the company's locomotives, on the evening of December 11th, 1887.

The charge is that, the injury is attributable to the fault and negligence of the defendant, in failing to use such scientific improvements as would have prevented the emission of sparks and consequent destruction of property by ignition.

Practically, the answer is the general issue and a special denial of negligence.

From the judgment, rendered on a verdict for about half the amount claimed, the defendant presents this appeal.

In a suit like this, brought against a chartered company, it is necessary that a plaintiff should prove two things, viz:

1.   That the fire was occasioned by sparks emitted from defendants' locomotives; and

2.   That, to all probability, the injury caused is the result of the carelessness and negligence of the defendant.

The evidence establishes conclusively, that the barn and contents, consisting in a large quantity of valuable pea-vine hay, were destroyed by fire, on the evening of the 11th of December, 1887, between the hours of 6 and 7, shortly after the passage of a south bound locomotive and train of defendant.    It also shows, that the hay house was situated at a short distance of one hundred and fifty feet from the road and that it had an opening facing the track.

It is admitted by the plaintiff that " there was no eye witness to the ignition of the barn by the sparks from the defendant's engine," but it is claimed that the circumstances point to that fact; that there is no counter theory offered by the defendant and that the damage is chargeable to the absence of caution and to the negligence of defendant.

Several witnesses were heard on behalf of plaintiff.    *Two* declare that they were on a road, at about twenty to thirty feet from the shed, when the train passed; that the locomotive was emitting numerous sparks as large as the end of the thumb; that there was a high wind from the north, in the direction of the barn, and sparks may have gone, one says, about an acre, the other, a hundred feet; that they noticed the barn on fire some five minutes after the passage of the train, the fire

coming out of an opening in the building toward the track.   *Two* other witnesses testify, that they saw fire set by sparks from defendant's engine to rice, hay and corn fields at distances ranging from forty to one hundred feet.   A *last* witness, the stable minder of the hay house, says, that, on the day of the occurrence, between 6 and 7 o'clock p. m., he was on the gallery of his house, which faces east, at a distance of some twenty-five feet from the road, when the train, which was behind time—went through; that he did not exactly notice that sparks were emitted from the locomotive on that particular day, although he did on other occasions.   On cross-examination, he declares that he smokes, went into the hay house between 3 and 4 o'clock, was not then smoking, smokes only when in his house.   This is all of plaintiff's proof.

Had plaintiff rested his case here, it might possibly be claimed that the judgment rendered, is justified; but it is difficult to conceive how, in the presence of all the counter proof introduced by the defence, such judgment can be sustained.

Whatever might be the force of plaintiff's evidence, as circumstantial proof, if it stood alone, it would be circumstantial proof only.   In estimating its force all the circumstances must be considered together.   In doing so, it is apparent that the evidence adduced by the defendant establish circumstances, which overthrow and destroy the effect of plaintiff's testimony.

The evidence of plaintiff is purely conjectural and to a certain extent, not to be underrated, self-destructive.

It surely does not show that the sparks emitted from the locomotive were seen flying, or carried in the air, from it, to the shed and that, on falling there, they set the building on fire.   Neither does it establish that the accident, if it happened as alleged, is attributable to the carelessness and negligence of the company in not using proper appliances to prevent such occurrences and injury to property; or that, under the circumstances, it exhibits a condition of things which shifts the burden of proof from his shoulders upon the defendant, which as a *chartered* corporation may be entitled to greater immunity than if not authorized by law.

It would serve no useful purpose to discuss that interesting question which, however, considered and dealt with by other courts of last resort, in our sister States and abroad, has not been passed upon in this State as yet.

Conceding *arguendo*, however, that the plaintiff has by the proof adduced, thus shifted the burden, we are clear that the testimony offered by the defendant is of such grave character, as entitles it to serious con-

sideration, before treating it as nugatory and inflicting on a corporation, legally empowered to carry on the business of transportation by steam power necessarily generated by fire, the reparation of damages for which it would not otherwise be amenable.

The engineer who drove the locomotive, from the smoke stack of which, sparks are said to have been emitted which destroyed plaintiff's hay house, says, that, when he passed through the plantation, she was throwing some little sparks and some fine dust of sparks that came out alive from the stack; that they could be seen, if it was dark enough; but that, he thinks, it was not dark enough that time to see them plainly; that the engine did not throw sparks very far, that he complained of her blowing them too close down inside the cab; that it was a mighty poor engine for getting rid of the sparks, that he tried to get a change of cone, as the one she had was too large, as it made the engine work against herself in regard to steam and throwing the sparks down. He says that the stack used is known as a *diamond* stack, provided with a cone and a netting, or spark arrester, which are tried and successful appliances, used for the purpose of preventing large sparks from passing through the stack, which, when forced up by the steam from the fire to the stack, are, when large, beaten up and down under an internally supported surface, or circular roof, under the netting, until, by this process, reduced to such small size, as will permit them to pass harmlessly through the netting, — the parts pulverized being sent back and expelled by the fire box beneath.

The master of transportation declares positively that, after sparks leave the stack, they are thrown straight in the air and may possibly get as far as fifteen or twenty feet from the centre of the rail, owing to the velocity of the train; that, when it runs fast, the sparks do not go even that far; that a spark, coming through the netting on the smoke stack, used on the locomotive in question, would live fifty feet, either side of the track; that it is impossible to pass any thing through the netting that is not ground up to one-sixth of an inch; that a gallon of sparks emitted through the netting weighs about three and a half pounds, and this gives an idea of how many sparks there are in it and what is the weight of each one.

The foreman of the machine shops says, that it would be just as absurd to attribute *that* fire to the sparks emitted from that engine, as to attribute it to the sparks from an engine in England. A spark emitted, he says, from a *diamond* stack would have to be fired out of a gun to reach a distance of forty feet, as, there is no weight in the spark to carry it that distance, and no coal or wood spark could be alive on

reaching that distance. Its fast speed through the air would chill a coal spark before reaching that distance, and would break a wood spark to atoms.

It is not claimed that any but *coal* was used in this case.

The master mechanic says, that sparks might go behind the train as far as a hundred feet, but could not set anything on fire beyond that distance, and that he does not think that it is possible that the barn in question could have been set on fire by sparks emitted from the locomotive alluded to, supplied as she was.

Another master mechanic corroborates this testimony, resting his opinion on facts, also.

The chief engineer of the New Orleans Fire Department says, that he has an experience of twenty years in combatting and extinguishing fires, and that it is not reasonable to suppose that a spark of a quarter of an inch could set fire to anything after traveling twenty-five or thirty feet through the air, and that a locomotive, running at such speed and the wind blowing hard, could not throw sparks alive much further.

The testimony of those witnesses is unimpeached. It bear the semblance of truth in all of its parts and cannot be considered as barren of effect or suspicious, simply because it emanates from employees of the company.

The discrepancy between the testimony of two of plaintiff's witnesses as to the size of the sparks and the distance through which they wafted, and that of other witnesses on the same or kindred subjects, is easily accounted for and reconciled by the notable and recognized circumstances that, owing to a certain optical delusion, the size of a light and the space through which it may be carried, *during darkness*, are by a wise dispensation of nature invariably magnified to considerable disproportion.

Were it true that, from the facts proved by the plaintiff, namely : the passage of the train, the emission of sparks from its smoke stack, and five minutes afterwards, the ignition of the barn, a presumption arose that the fire was occasioned by the sparks emitted, which threw the burden of contradiction and of proof of proper care and attention, etc., on the company, we think that the testimony thus offered has effectually repelled that presumption by establishing quite the reverse, namely : the taking of all the required precaution and the physical impossibility of the occurrence, under the circumstances charged.

It is such as well suggests the probability of fire from some other cause, which may be imagined, either because the barn was exposed to such accident, by being on a road of foot and vehicle traveling, or was

in charge of one who smoked and who accidentally or without noticing it, might have been instrumental in the accident, or spontaneous combustion, or some other cause.

Apart from these considerations may it not well be asked: whether the plaintiff was not guilty of contributory negligence, by having an opening in the hay house towards the track and by leaving it unclosed, as it must have been, if the fire was occasioned by some external cause, and besides : whether, under the circumstances, the fact of the plaintiff's barn, being at a distance within which it could be set on fire by sparks from locomotives ( taking his theory for true ), the maxim, *volenti non fit injuria*, may not be applied?

A close examination of the testimony satisfies us of the identity of the smoke stack or spark arrester referred to by the witnesses with that used on the locomotive in question, so effectually, that we deem it unnecessary to discuss that matter of fact.

We conclude that the defendant had just cause to appeal.

It is, therefore, ordered and decreed that the verdict of the jury be set aside and the judgment upon it be reversed and annulled and that there now be judgment in favor of defendant rejecting plaintiff's demand, with costs in both courts.