(82 South. 700)

No. 21926.

PALMETTO MOSS FACTORY et al. v. TEXAS & P. RY. CO.

MEYER et al. v. SAME.

(May 9, 1916. On the Merits, June 29, 1918. On Rehearing, June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR ⟣⟢394(1)—JUDGMENT IN FAVOR OF TWO PLAINTIFFS — SEPARATE ORDERS OR APPEAL BONDS.

Where, though the amount which defendant was condemned to pay was apportioned between the two plaintiffs in whose favor judgment was rendered, yet only one judgment was rendered, it was not necessary that defendant as appellant should have obtained two orders of appeal or furnished two appeal bonds.

On the Merits.

2. RAILROADS ⟣⟢453—LIABILITY FOR FIRES.

No liability to answer in damages for injuries caused by fires along its tracks set by locomotives attaches to a railroad in the absence of negligence.

On Rehearing.

3. RAILROADS ⟣⟢482(4)—SETTING FIRE—LIABILITY.

Railroad under the facts *held* liable for damages which it caused by setting fire with a spark from one of its locomotives to a moss factory leased by one plaintiff to another.

4. DAMAGES ⟣⟢40(3) — SETTING FIRE — RECOVERY OF PROFITS.

A moss factory, whose buildings and stock were destroyed by fire set by a spark from defendant railroad's locomotive, was not entitled to the allowance of damages from the loss of prospective profits on the sale of moss.

5. DAMAGES ⟣⟢111 — SETTING FIRE — RECOVERY FOR BUILDING.

Owner of a building leased to a moss factory, as against a railroad which set fire to the premises by a spark, *held* not entitled to recover as for a new building, but for the actual value of the property destroyed with a deduction from the figures submitted on the cost of construction to cover depreciation.

Provosty, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Suits by the Palmetto Moss Factory and another and by Charles Meyer and another against the Texas & Pacific Railway Company. From judgments for plaintiffs, defendant appeals, and plaintiffs move to dismiss. Motions to dismiss the appeals overruled, and judgments for plaintiffs amended by reducing the amounts recovered; otherwise affirmed.

William H. Peterman, of Alexandria, and Howe, Fenner, Spencer & Cocke, of New Orleans, for appellant.

M. M. Boatner, of New Orleans, and John W. Lewis, of Opelousas, for appellees Meyer and German Fire Ins. Co.

E. B. Dubuisson, of Opelousas, and M. M. Boatner, of New Orleans, for appellees Palmetto Moss Factory and German Fire Ins. Co.

On Motions to Dismiss Appeals.

O'NIELL, J. These two suits were filed separately, but, as the cause of action in each case arose from the same occurrence, and as the testimony was applicable to both suits, they were consolidated for the purpose of the trial. The demands are for damages alleged to have been sustained by the destruction by fire of a building owned by the plaintiff Charles Meyer, and of the contents, consisting of machinery and stock owned by the plaintiff Palmetto Moss Factory. The plaintiffs allege that the fire was caused by sparks from the locomotive of the defendant railway company.

In the first suit the Palmetto Moss Factory claimed compensation for an alleged loss of $2,791.75, of which the German Fire Insurance Company paid $719.51, was subrogated pro tanto to the claim against the railway company, and is a plaintiff in this suit. The

prayer of the petition was that the plaintiffs have judgment for the sum of $2,791.75.

In the other suit Charles Meyer claimed compensation for an alleged loss of $3,164.06, of which the German Fire Insurance Company paid $1,000, was subrogated pro tanto to the claim against the railway company, and is a plaintiff in the suit. The prayer of the petition was that the plaintiffs have judgment against the defendant for $3,164.06.

The plaintiffs in the one suit, therefore, are the Palmetto Moss Factory and the German Fire Insurance Company, and the plaintiffs in the other suit are Charles Meyer and the German Fire Insurance Company. The petitioners did not in either suit pray that a separate judgment be rendered in favor of each plaintiff.

The cases having been tried together, a separate judgment was rendered in each case. In the case of the Palmetto Moss Factory and the German Fire Insurance Company one item of loss was reduced $150 by the court, and judgment for the balance of $2,641.75 was rendered and apportioned thus: It was ordered, adjudged, and decreed that the Palmetto Moss Factory recover of and from the defendant railway company $1,-922.24, with legal interest from the date of the judgment; and it was further ordered, adjudged, and decreed that the German Fire Insurance Company recover of and from the defendant railway company $719.51, with legal interest from the date of the judgment. The defendant was condemned to pay all costs. In the case of Charles Meyer and the German Fire Insurance Company judgment was rendered for the full sum claimed, apportioned thus: It was ordered, adjudged, and decreed that Charles Meyer recover of and from the defendant railway $2,164.06, with legal interest from the date of the judgment; and it was further ordered, adjudged, and decreed that the German Fire Insurance Company recover of and from the defendant

railway company $1,000, with legal interest from the date of the judgment. The defendant was condemned to pay all costs.

The defendant railway company moved for and obtained a separate order of appeal in each case, and furnished only one appeal bond in each case for an amount exceeding by one-half the sum allowed both plaintiffs; that is, one bond for one-half over and above the total sum allowed the Palmetto Moss Factory and the German Fire Insurance Company in one case, and another bond for one-half over and above the total sum allowed Charles Meyer and the German Fire Insurance Company in the other case.

Each of the three appellees has filed a separate motion to dismiss the appeals, on the ground that two separate appeal bonds should have been filed in each case. They rely upon the ruling in the Successions of P. C. Clairteaux and U. Clairteaux, 35 La. Ann. 1178, as a precedent for a dismissal of the appeals in this case.

In the case cited each succession was represented by a different administratrix; and it appears that Ferdinand Samuel filed an opposition to the account of one, and Jules Samuel filed an opposition to the account of the other administratrix. The oppositions were not tried together, but were consolidated after the judgments were rendered. A separate judgment was rendered dismissing the opposition in each case. The opponents obtained two separate orders of appeal, but filed only one appeal bond; and, on motion of the appellees, the appeals were dismissed.

[1] In the case before us, although the amount which the defendant was condemned to pay was apportioned between the two plaintiffs in whose favor the judgment was rendered, only one judgment was rendered in each case. Hence it was not necessary that the defendant, as appellant, should have obtained two orders of appeal or furnished two appeal bonds in each case. The decision

in the case of La Groue and Wife v. City of New Orleans, 114 La. 254, 38 South. 160, and the cases there cited, are precedents for this ruling.

The motions to dismiss the appeals are overruled.

## On the Merits.

PROVOSTY, J.  A building belonging to one of the plaintiffs in these two consolidated cases, which the other plaintiff leased for operating a moss factory, was destroyed by fire caused by sparks emitted by a locomotive of the defendant company. The owner of the building testifies that it was situated 75 to 80 feet from the railroad track, and so does another witness; but the diagram offered in evidence by the plaintiffs shows that the right of way of the defendant company extends only 67½ feet from the track on that side, and that the entire platform of the building in question was within the right of way, while the front of the main body of it was on the line of the right of way. The evidence shows that loose moss and inflammable trash lay in front and on the side of the building, and that the fire originated in this loose moss and inflammable trash and invaded the building.

The fire occurred in the afternoon of the 26th of January. The spark-arresting apparatus of the locomotive (which is shown to have been an up-to-date modern equipment or standard) was inspected a few hours after the fire, and was found to be in perfect condition. It had been inspected on the day before the fire and found to be in perfect condition. It was again inspected on the day after the fire and found to be in perfect condition. It had been inspected four days before the fire and found to be in perfect condition. It was inspected ten days after the fire and found to be in perfect condition. These inspections were made by three different men, whose competency in the premises and honesty are not questioned.

The defendant does not plead contributory negligence on the part of the plaintiffs, but urges that it owed no further duty to plaintiffs than to take reasonable care and precaution against injuring plaintiff's property, and that it fulfilled that duty completely, and was therefore not negligent and in consequence is not liable for the loss.

We cannot see that the defendant company could have done more than it did in the discharge of its duty not to injure plaintiff. It provided its locomotive with approved modern apparatus for arresting sparks, and saw to it that this apparatus was in perfect order.

A colored girl, cook of one of the plaintiffs, and a colored woman and a colored man living within a stone's throw of the plaintiffs, testify that they noticed that the fireman was shoveling coal into the furnace when the engine was passing this factory. The fireman contradicts this; and he explains that, being compelled to be ringing the bell while passing through towns (this factory was in a town), he could not have been just then firing his engine, and that, moreover, firemen are strictly enjoined not to fire their engines while passing through a town, but only in the open country. A strong wind was blowing across the railroad, which a fireman would know would carry sparks to the buildings of the town along the railroad. This makes it the more improbable that he would choose exactly the moment of passing through the town for firing his engine. The engineer is positive that the fireman was not firing when passing through the town, but was ringing the bell. We cannot accept the testimony of the said colored people as outweighing that of these two white men, especially that the latter is supported by all the probabilities of the matter; at any rate not sufficiently outweighing for positively establishing plaintiff's case on this point.

[2] The law is not that a railroad company is liable in damages for every fire its locomotives may cause to property along its tracks. "No liability to answer in damages for injuries caused by such fires attaches in the absence of negligence." 11 R. C. L. 961. If "proper care and precaution has been used the company will not be liable." 33 Cyc. 1325; Elliott on Railroads, p. 1221. In addition to the very numerous decisions cited in support of these texts, see, for more recent decisions in the same sense, Railroad Co. v. Wheeler, 6 Ga. App. 270, 164 S. E. 1114; Sims v. Ice Co., 109 Md. 68, 71 Atl. 522; Deppe v. Railroad Co., 152 N. C. 79, 67 S. E. 262; Jacobs v. Railroad Co., 68 W. Va. 618, 70 S. E. 369; Railroad Co. v. Mentzer, 214 Fed. 10, 130 C. C. A. 404; Railroad Co. v. Peck (Ind. App.) 114 N. E. 475; Timber Co. v. Railroad Co., 82 Or. 185, 161 Pac. 398; Insurance Co. v. Railroad Co., 96 Wash. 113, 164 Pac. 765; McCullough v. Railroad Co., 44 Utah, 337, 140 Pac. 767. See syllabus in Edrington v. Railroad Co., 41 La. Ann. 96, 6 South. 19.

Lemann v. Railroad Co., 128 La. 1089, 55 South. 684, and Tortorice v. Railroad Co., 142 La. 229, 76 South. 620, contain nothing contrary to the foregoing. The court there found that the fact of the spark-arresting apparatus having been in good condition was not positively established. In this case we think it was. In fact, we do not see what more or better proof could be expected of a railroad on that point than was administered in this case. In Fuller v. Chicago, 137 La. 997, 69 South. 804, the railroad was found to have been negligent in the manner of operating the train, and the efficiency of the spark arrester was left doubtful by the evidence. In the case at bar the train merely passed by the buildings on its regular course; and the efficiency of the spark arrester is fully testified to, and a sample of the wire mesh out of which the screen of the spark arrester was made is produced in court, and it shows that a spark would have to be very small indeed to pass through it. In Thomason v. Kansas, etc., R. Co., 122 La. 995, 48 South. 432, the spark arrester was shown to be defective. In Brady v. Jay, 111 La. 1071, 36 South. 132, the locomotive was a wood-burning locomotive, admittedly more dangerous than the coal-burning locomotive.

The evidence shows that the roofs of buildings along the defendant company's railroad have been set on fire by sparks from its locomotives. The locomotives which did this may have been defective. Had the fire originated on the roof of the building in the present case, this would have gone far towards showing that either the spark-arresting apparatus was defective or that the locomotive was being negligently operated, but it does not take a very large spark for setting dry moss or inflammable trash on fire on a dry day; and the fire conditions on the present occasion were exceptionally good, for the train had hardly passed before the building was in flames. The operation of a moss factory so close to a railroad is in itself dangerous, and extra care should be taken not to increase the risk by leaving dry moss outside or hanging out from windows or inflammable trash which an ordinary locomotive spark may set on fire. If a thing of that kind is done, there enters into the case an element such as led this court to question, in Edrington v. Railroad Co., 41 La. Ann. 102, 6 South. 19, whether the maxim, "Volenti non fit injuria," did not apply. Railroads must be operated, and no means has yet been found, so far as this court is informed, of preventing entirely the emission of sparks in the ordinary operation of freight engines using coal.

The judgment appealed from is set aside,

and the suits are dismissed at the cost of the plaintiffs.

O'NIELL, J., dissents from the conclusion of fact.

### On Rehearing.

DAWKINS, J. [3] A further examination into the record in this case convinces us that we were in error as to the facts. It can hardly be disputed that the fire which destroyed the property of the plaintiffs was started by sparks or live cinders emitted from the locomotive of the defendant company, and the question is: Does the proof reasonably show this to have been due to a faulty condition of the engine, or, specifically, the spark arrester?

By actual measurement, the front line of the platform of the moss factory was 67 feet from the track on which the locomotive whose sparks started the fire passed. The evidence further shows that the fire began and was first discovered either immediately in front of and in contact with the building facing the railroad track, or at the side, a little farther distant. The wind was blowing from the direction of the track and towards the building, and the fire broke out directly after the train had passed. So that we are confronted with the fact that a fire was started by the engine in question at least 60 feet from where the sparks or cinders were emitted. A number of witnesses also testified that live cinders were thrown as the train passed, some of which fell on and burned the clothes and flesh of persons farther away even than the moss factory.

As against the showing above indicated appears the testimony of those who inspected the spark arrester before and after the fire, and who say that it was in perfect condition. They also say that an engine in such condition could not throw live cinders as much as 25 feet from the track. But they are contradicted by the physical or mechanical action of the engine itself, which did

start the fire more than twice that far away. What, then, must be the inevitable conclusion? If a properly equipped engine could not have started the fire in the manner in which the overwhelming weight of the evidence shows this one to have been started, this one undoubtedly must have been faulty.

Had it been shown that the fire started in loose moss in close proximity to the track and then spread to the building, in view of the circumstances of the absence of the watchman, whose duty it was to watch the building, we think a case would have been made out to preclude plaintiffs' recovery, regardless of any plea of contributory negligence; for we recognize that it has so far proven impracticable to construct an engine which will not emit some sparks, and that the demands of commerce require that trains shall be operated. And we think further that, if the plaintiff had alleged such a state of facts, an exception of no cause of action could and should have been sustained. It is true that some of the witnesses testify that loose moss was scattered around over the premises, but we take it that in a factory of this kind, much like a cotton gin, it would be impracticable to operate without some of the moss being scattered about and in the building. Yet would not those operating the factory have a right reasonably to assume that the trains of defendant would be drawn by properly equipped engines, and that live sparks or cinders would not be thrown sufficiently far to ignite the building? In any event the evidence shows that the fire started immediately at or in contact with the building, and the thing which started it must be held to have been the proximate cause of the loss, whatever may have been the view if it had started under circumstances which would have permitted those who were or should have been in charge to prevent its spreading.

Under the state of facts which we have

outlined, therefore, the defendant is liable for the damages which it caused. Tortorice v. Yazoo & Mississippi Valley Railway Co., 142 La. 229, 76 South. 620.

### The Quantum of Damages.

In the case of Palmetto Moss Factory and others against the defendant the lower court allowed the sum of $1,922.24 in favor of the Moss Factory and $719.51 for the German Fire Insurance Company. Defendant contends that under this conclusion, the railway company is made to pay for the machinery (which was the only part of the property belonging to the Moss Factory that was insured) twice, once to each of the plaintiffs. However, we believe that counsel for defendant have a misconception of how the lower judge figured the loss. Considering that in the opinion he says that he finds that the proof establishes the loss claimed in items 2 and 3 of article 9 and the item claimed in article 10 of the petition, but does not support item 1 of article 9 in its entirety, we think his calculation was as follows:

| | |
|---|---:|
| Item 2 of article 9 | $1,175.40 |
| Item 3 of article 9 | 6.00 |
| Item embraced in article 10 | 500.00 |
| Item 1 of article 9 (as revised by lower court) | 960.45 |
| | $2,641.85 |
| Less amount paid by Insurance Co | 719.51 |
| Balance due Palmetto Moss Factory | $1,922.34 |

So that it will be seen that the lower court did not render a double judgment for the same item in favor of both plaintiffs, but apparently deducted from the judgment of the Moss Factory the item of $719.51 for which it gave judgment in favor of the insurance company.

[4] However, we think the court below made an error in allowing a recovery for the $500 claimed as prospective profits on the sale of the moss, both because it is not sufficiently established by proof, as a matter of fact, and because, in an action ex delicto,

in the absence of fraud or malice, there is no basis, as a matter of law, for the allowance of such damages, as there would be in an action for the violation of a contract where such loss entered into the contemplation of the parties. The item of $1,175.40 covers the value of the moss destroyed, and we think this is all the Moss Factory was entitled to recover under the circumstances, and that plaintiff Palmetto Moss Factory should recover $1,422.34. 1 Sutherland on Damages (3d Ed.) p. 302, § 105.

[5] Defendant further complains that the judgment in favor of Charles Meyer in the sum of $2,164.06 is excessive, because: First, in the settlement and subrogation with and to the German Fire Insurance Company plaintiff placed a value of $2,013.06 on the property destroyed; and, second, to allow a recovery for $2,164.06 would also compel the defendant to pay both plaintiff and the German Fire Insurance Company for the same loss to the extent of $1,000. However, as in the other case, defendant loses sight of the fact that the lower court in this case, as in the other, deducted from the claim of Meyer the sum for which the insurance company was given judgment. He found that the demand of plaintiff was supported by the proof in its entirety, that is, $3,164.06, but only gave judgment aggregating that amount in favor of both parties. Under the proof, we do not think plaintiff Meyer is entitled to recover as for a new building, as is contemplated in the estimate of materials, labor, etc., for rebuilding; but he should recover for the actual value of the property destroyed. We think that at least one-third should be deducted from the figures submitted to cover the depreciation of the old building which was burned, or, say, as follows:

| | |
|---|---:|
| Cost of construction of new building | $3,164.06 |
| Less one-third for depreciation | 1,054.68 |
| | $2,109.38 |
| Less amount paid by Insurance Company | 1,000.00 |
| Total recovery | $1,109.38 |

· For the reasons assigned our former decree is set aside, and it is now ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by reducing the sum to be paid by defendant to plaintiff Palmetto Moss Factory to the sum of $1,422.34. It is further ordered that the judgment in favor of plaintiff Charles Meyer be, and the same is hereby, reduced to the sum of $1,109.38. Both sums to bear legal interest from judicial demand. In other respects the judgment of the lower court is affirmed, said plaintiffs, appellees, to pay the costs of this appeal, and the costs of the lower court to be paid by the defendant.

PROVOSTY, J., dissents for reasons assigned in original opinion.