ELLIS, Judge.
Plaintiffs filed this suit in which they- are seeking to recover overtime compensation under the. Federal Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and the Portal to Portal Act of 1947, 29 U.S. C.A. § 251 et seq., for a thirty minute lunch period which they contend was not free and uninterrupted. The suit as originally filed was one for a thirty minute change of clothes time, but by agreement and stipulation the issue presented the lower court and this court is whether thg lunch period of the plaintiffs was com-pensable under the law applicable. Stated another way: “Do the plaintiffs have a free and uninterrupted lunch period?”
Plaintiffs specifically contend that they are entitled to wages for all time devoted to either performing their assigned tasks or standing by to do so, and that in the latter instance compensability is not dependent upon the company rules or upon frequency of interruptions of an employee but is dependent upon whether an employee is subject to supervision and is primarily engaged on a “stand-by” basis for the benefit of the employer.
Prior to the filing of the answer and trial, a number of pleas and exceptions were filed but the only ones remaining on which there was a disagreement was the plea of estoppel based upon the settlement of a prior case known as the Williamson suit, filed November 13, 1945, in which many of the plaintiffs herein were plaintiffs therein, whereby it was agreed that the 30 minute change of clothes time was compensable, and the plaintiffs in the Williamson suit, as well as employees who had not joined in the suit but were entitled to the benefits of-the settlement, were paid for this change of clothes time. This stipulation and agreement as to the facts üpon which the settlement was based in the Williamson suit pro vided in part as follows:
“5. The question of the compen-sability of change of clothes time, as that term is defined in defendants’ answers, as amended, and the amount of time,required for change of- clothes, if , compensable, was .placed at issue before the Eighth Regional War Labor Board-under notice and stipulation set forth in.-the - pleadings in this suit, *152 copies of which are attached hereto as Annexes 1 and 2, respectively.
“6. On October 26, 1945, that Board handed down its Directive Order and Arbitration Award, a copy of which is attached hereto as Annex 3.
"7. This Directive Order and Arbitration Award recognized that all TEL workers and sodium cell room workers were entitled to change of clothes time, but held that other sodium section workers were not so entitled because they were not required to change clothes, and the agreement of settlement in support of which this stipulation is filed, recognizes and gives effect to this ruling of said Board.
“8. The Directive Order and Arbitration Award, fixing the amount of time required for change of clothes time at thirty (30) minutes per day, was based upon evidence adduced at the hearing before said Board, the accuracy and correctness of which are hereby recognized and acknowledged by the parties hereto. Included in this evidence were Annexes 4 to 10, both inclusive, copies of which are annexed hereto and made a part hereof.
* * * * * sjc
“11. With respect to all TEL workers other than straight day workers with whom settlement has heretofore been made, the defense that they have been paid all overtime compensation to which they are entitled is based upon the claim that they necessarily spent on the plant not more than eight and one-half (8J4) hours each day, seven and one-half (7J4) hours of which was spent working on the job, one-half ((4) hour for a free and uninterrupted lunch period, and not more than one-half i}/¿) hour for change of clothes time, walking time, shift changing time, bathing time, or otherwise. Defendants contend that this schedule has been in effect continuously for more than two years immediately prior to the institution of this suit.
“12. Plaintiffs acknowledge and recognize that plaintiffs referred to in paragraph 11 now have a free and uninterrupted lunch period of one-half ()4) hour, but contend that this practice with respect to the lunch hour was not established until late in 1945, prior to which time the one-half (j4) hour lunch period was neither free nor uninterrupted. All other details of the work schedule have been recognized and admitted hereinabove to be correctly shown by the attached schedules.,
“13. Therefore, the purpose in. agreeing that this settlement shall be-made and judgment rendered herein on( the basis of thirty (30) minutes for-each day worked for a period of eleven months, beginning November 13, 1944, and ending October 12, 1945, is to effect a transaction and settlement of: this dispute concerning questions of’ fact, in the manner set forth in the joint petition to which this stipulation-, is attached, which every one of the-parties hereto prefers to the -hope of’ gaming balanced by the danger of’ losing.”
The judgment in the Williamson suit was. dated March 10, 1947 and was based upon a prior judgment of date January 9, 1947, which approved the settlement made by the-parties thereto and the stipulation of facts, upon which it was based as above recited, and which the Court adopted as its finding-of fact in approving the settlement.
It is therefore contended by the defendants that all plaintiffs in the present suit, who were plaintiffs or participated in the settlement in the Williamson case were-estopped to now claim compensation for-the 30 minute lunch period. The present, suit seeks overtime compensation for the-30 minute lunch period from June 27, 1946,. to June 27, 1947. Plaintiffs and defendant, stipulate that the prescription of one year is applicable to plaintiffs’ claim subject to. the suspensive effect of the Soldiers’ and: Sailors’ Civil Relief Act of 1940, 50 U.S.C. A.Appendix, § 501 et seq., as to plaintiffs, who had served in the military services off *153 the United States during World War II ■during the term of such service.
The Lower Court in effect referred this plea to the merits and after trial which was long enough for the transcript of testimony to contain some 2,899 pages, did not specifically pass upon the plea of estoppel as he stated that it was unnecessary in view of his opinion that the plaintiffs’ suit should be dismissed on the merits. The District Court after trial and immediately upon the closing of the testimony dictated his oral reasons into the record in which he stated that the plaintiffs had failed to sustain the burden of proof and dismissed their suit at their costs. Judgment was rendered and signed by the District Court, and the plaintiffs by petition through their •counsel secured an order of devolutive appeal returnable to the Supreme Court “upon their furnishing bond with good and solvent ■surety, conditioned as the law directs, in the amount of $50.00 each.” The Supreme ■Court transferred the appeal to this court upon the finding that the claim of the individual plaintiffs was below their jurisdictional amount.
The defendant has filed a motion to dismiss the appeal of 300 of the 520 plaintiffs named in the judgment herein as they did not give bond by June 4, 1953, the first anniversary of the signing of the judgment. As stated in the defendant’s brief:
“The underlying philosophy of the motion in both of its aspects is the several nature of plaintiffs’ claims, which for that reason require separate bonds on appeal, and which cannot be cumulated for jurisdictional purposes under the Fair Labor Standards Act.”
The plaintiffs-appellants maintain that the filing of an appeal bond for costs by any one of the appellants would suffice to perfect the appeal for all of those who joined in the motion for the appeal, regardless of the recitation in the order of the District Court requiring individual bonds.
A decision upon this point by our Supreme Court is that of Vienne v. Chalona, 203 La. 450, 14 So.2d 54, 55. There joint plaintiffs, in one petition, sought recovery of damages in tort occasioned by a single automobile accident. Each plaintiff recovered judgment in a different amount and both took a devolutive appeal, allowed in a single order upon a joint motion. Only one appeal bond was filed. The Supreme Court, holding that one bond for costs was sufficient for both appellants, used the language following:
“The reason why there was only one motion for an appeal, only one order of appeal, and only one appeal bond, is that there was only one lawsuit in which the plaintiffs had joined in one petition, founded upon one cause of action. The plaintiffs had the same right to join in one motion for an appeal that they had originally to join in one petition for a judgment in favor of each of them. There was no more necessity for having two separate motions for an appeal, or two orders of appeal, or two appeal bonds, than there was originally to have two separate petitions, — one for each plaintiff. As far as the appeal bond is concerned we must bear in mind that, ■according to Article 578 of the Code of Practice, the only bond that can be required of an appellant, for a devolu-tive appeal, is a bond ‘to secure the payment of the costs’. As there is only one lawsuit here, and only one appeal, notwithstanding there are two appellants, there can be only one cost bill; and there is no necessity for having two bonds to secure one and the same cost bill.”
The Court of Appeal, Second Circuit, in Security Insurance Co. v. Couvillion, 16 So.2d 262, 264, followed the Chalona case and quoted from the language of the Supreme Court in its per curiam on the rehearing of the Chalona case, as follows:
“ ‘There was a difference in their (plaintiffs) causes of action in that the cause of action of one of them might have been subject to defenses not applicable to the cause of action of the other plaintiff. The importance *154 of that, however, passed out of the case when the defendants failed to plead that there was a misjoinder — ■ if in law there was a misjoinder — of parties plaintiff. It is sufficient to say-now, for the purpose of passing upon the motion to dismiss the appeal, that there was only one lawsuit, — and that the defendants long ago waived whatever right they might have had to require two separate lawsuits.’ ”
Our Supreme Court has consistently held that only one appeal bond is required for multiple appellants from a single judgment. See Succession of Clark, 1878, 30 La.Ann. 801; Succession of Geddes, 1884, 36 La.Ann. 963; Schleider v. Martinez, 1886, 38 La.Ann. 847; People’s Brewing Co. v. Babinger, 1888, 40 La.Ann. 277, 4 So. 82; Wegmann v. Wegmann, 1900, 52 La.Ann. 1309, 27 So. 889; Succession of Housknecht 1914, 135 La. 818, 66 So. 233, L.R.A.1915B, 396; Palmetto Moss Factory v. Texas & Pacific Ry. Co., 1919, 145 La. 555, 82 So. 700.
In the cases before us now, the various claims of the different plaintiffs arose from a single contract and no exceptions of mis-joinder were ever filed by the defendant and all of the claims were rejected by a single judgment below. A joint motion for appeal was made and a single order of the Lower Court was issued allowing the appeal.
The motion to dismiss the appeal is therefore overruled.
Estoppel
In view of the conclusion which we have reached that the judgment of the Lower Court is not manifestly erroneous and should be affirmed, it is not necessary that we discuss or pass upon this plea.
Merits
Plaintiffs in this court contend that the District Judge erred in holding that they must sustain the burden of proof, arguing that they had brought suit for the recovery of wages alleged to be due them pursuant to a written contract which causes of action were basically to enforce a conventional obligation, and that the defendant, having filed an answer, conceding that the plaintiffs were on the plant for 8^/2 hours per day, and asserting the defense that the plaintiffs had been fully paid all that was due them under the contract of employment, and in order to sustain the defense that the obligation to pay wages had been fully performed, the defendant further alleged that the plaintiffs each had a 1/2 hour lunch period per day which was not compensable, and that, therefore, the sole issue upon the merits being the compensability of this lunch period which the defendant was urging to support its claim that it had performed its obligation to pay wages, the defendant therefore bore the burden of proof.
In short, the ingenious argument is made by the plaintiff that the defense is a plea of payment or exoneration and therefore, the defendant has the burden of proving same, however, as the cases cited by plaintiffs indicate, this rule of law applies when the obligation is admitted by the defendant and the defendant then seeks exoneration by reason of payment of same. Here, however, the plaintiff is seeking to prove the obligation arising by reason of a statute rather than by contract, and the defendant has denied the very existence of the obligation. The defendant is not claiming ex-tinguishment of an admitted obligation but denies that any obligation whatsoever arose. As in all cases of suits on obligation, the plaintiff has the burden of proving the obligation and, therefore, the District Court correctly held the burden of proving this obligation rested on the plaintiffs rather than on the defendants. The burden of proving that they did not have a free and uninterrupted lunch period and that it was, therefore, compensable under the law, rested upon the plaintiffs.
Plaintiffs-employees contend that they are subject to company call, direction, control and supervision during the entire 8^/2 hours spent on the defendant-employer’s premises including the 30 minutes labeled as a “lunch period.” Basically, they con *155 tend that the duties of their employment consist not only of the performance of an assigned task hut of considerable “stand by” time, and that although it is true that they aTe required to leave their post of duty during the lunch period, they are subject to call and are actually called during the time technically allowed to them as their lunch period. Thus, the lunch period is not free for their own use but is merely a portion of their “stand-by” time, whereby they are on the premises for the benefit of the employer to take care of emergencies and to take care of the machinery and processes of the plant. The plaintiffs-employees further point out that they are unable due to reasons of physical limitation to remove their company work clothing and leave the plant premises during the lunch period, and that during this time they are subject to certain restrictions on their conduct such as being unable to indulge in “horse play” and athletics. As to these restrictions, the District Court found that the restriction against “horse play” was only a normal safety precaution, with which we agree, and that the alleged restrictions on recreational activities were not restrictions by the management but were attributable to the physically crowded nature of the plant. Plaintiffs-employees also contend that they were not allowed to sleep during this lunch period.
It is admitted that due to the size of the plant it is impractical and almost impossible for the employees to leave the plant premises and return home or go to a restaurant for their lunch period, and they are, instead, restricted to eating in a cafeteria or a “change house” if they bring their own lunch. Because of the potentially dangerous nature of the chemicals and the processes involved, employees cannot leave the premises without a pass.
The defendant contends, on the other hand, as taken from his brief:
“The defendant, in reply, says that the plaintiffs, during the lunch period, have no duties to perform, and are subject to no rules, other than those dictated by statute, safety, decency and common sense, and which are applicable to all persons on the plant, without any distinction whatsoever.
“The defendant says also that the rules are inflexible that an employee must be given a free and uninterrupted lunch period of 30 minutes. In case of emergency, or unforeseeable event, an employee might be recalled from his lunch, but in that case, he would be given a substitute period of 30 minutes, not including any time that might have been consumed at time of recall; and if the remaining available time in the work day was insufficient for that purpose, the employee would be paid for 30 minutes at time and a half overtime.”
The two lead cases cited to us by both plaintiffs and defendant are Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124, and Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, concerning “on call” time of firemen or fire guards spent in sleeping, recreation, and eating. In holding much of such time com-pensable as hours that should be included in the workday, the Supreme Court pointed out that employment may consist not only of performance of specific labor but also the employee’s presence on a “stand by” capacity to perform duties as needed. “Idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself.” Armour & Co. v. Wantock, 323 U. S. 126, at page 133, 65 S.Ct. 165, at page 168. The hours of work include not only time spent in actual labor by the employee, but also the time given to the employer. It was observed in the earlier case of Tennessee Coal, Iron & Railroad Company v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, allowing travelling time to miners (portal to portal pay), that an employer cannot be allowed to command all of an employee’s time while compensating him for only a part of it.
But these cases also are authority for the holding that whether the waiting time is worktime depends on all the facts and *156 circumstances of each case, and is basically a question of fact whether during- the time in question the employee is actually free to pursue his private needs or pleasures, or whether the time spent is predominantly under the control of the employer and for the employer’s benefit. For instance, in the Skidmore case above cited, the Court held that the time of the firemen required to be on the premises 3i4^t nights per week was “working time”, although actually consumed in playing checkers, listening to the radio, etc., since the firemen were “on call” for the employer’s benefit in affording fire protection, and these employees were thus required to give their time to their employer, which they would have spent otherwise had they been free to, but excluded from the worktime for which compensation was allowed was the time spent in eating and sleeping, as pursuits of a private nature very infrequently interrupted-which could be adequately and comfortably followed in the facilities afforded the employees and upon which presumably the employees would have spent their time whether on the premises or off. In both the Wantock and Muscoda Local cases above the District Court, 40 F.Supp. 4, 10, had excluded eating time (in the latter, a “fixed lunch [period] of one-half hour during which the employees [were] -relieved of all duties”), from which ruling the employees had not appealed, and concerning which the appellate courts expressed no opinion.
In General Electric Co. v. Porter, 9 Cir., 208 F.2d 805, relied upon by plaintiff, the employer was required to pay firemen on a 24-hour shift every other day wages during the entire 24 hours, including the sleeping time, and the indicia relied upon included: the employer received the benefit of 24 hours of fire protection, since the men were on call and under the direction (subject to call) of their employer at sleep as well as awake; this was the only effective way for the employer to receive 24 hours of fire protection, to have the employees on the premises on a standby basis; the probability of interruption under the circumstances (furnishing fire protection to a community of 30,000 people) was more than very occasionally. Similarly, in; Glenn L. Martin Neb. Co. v. Culkin, 8 Cir., 197 F.2d 981, and Lindell v. General Electric Co., 44 Wash.2d 386, 267 P.2d 709, a 30 minute lunch period of guards was held to be compensable as working time, even though the employees were permitted (or required in the Lindell case) to leave their post of duty and theoretically relieved of all duties whatsoever. The rationale of these cases was that whether at their actual post of duty or in the cafeteria these employees were performing the duties for which they were paid, which were to be available and alert to quell disturbances or extinguish flames; thus they were not really free agents during the time in question, but were available for the employer’s benefit. Glenn L. Martin Neb. Co. v. Culkin dwelt more on, still engaged in “principal activity” even if theoretically free; Lindell v. General Electric Co. went more on: were under restrictions, had to be alert, did not remove uni forms as guards, and mere uniform as guard was function in inhibiting disturbance, unusual nature of atomic installation and necessity of exceptional alertness, etc.
Other cases relied upon by plaintiff which held the on-premise eating time of employees compensable are F. W. Stock & Sons, Inc., v. Thompson, 6 Cir., 194 F.2d 493, Biggs v. Joshua Hendy Corp., 9 Cir., 183 F.2d 515, Mills v. Joshua Hendy Corporation, 9 Cir., 169 F.2d 898 and U. S. v. Ewald Iron Co., D.C., 67 F.Supp. 67. In F. W. Stock & Sons, Inc., v. Thompson, above cited, the engineers did not leave their engines unattended, but ate with one eye on same, while the packers, millers, and oilers ate in the immediate vicinity of their machines upon which constant attendance was required so that the machinery could continue to operate without breakdown. In the Mills case, above cited, the boilerman watched his boiler while he ate his lunch at a nearby desk, and thus “Services of the same type and character were rendered at all times.” These cases are, of course, authority for the proposition that the merely labelling of a portion of the workday as “lunch period” does not remove *157 it from the portion for which wages are due, if the employee actually during the period in question is performing services for the employer, even though of a standby nature.
Among the cases relied upon by the defendant-employer are Fox v. Summit King Mines, 9 Cir., 143 F.2d 926 Tully v. Joshua Hendy Corporation, D.C., 79 F.Supp. 709, Thomas v. Peerless Carbon Company, D.C., 62 F.Supp. 154, and Sunshine Mining Company v. Carver, D.C., 41 F.Supp. 60, where the lunch period of the employees was held not to be part of the working day. In these cases the employees were relieved of all duties during their lunch period which was fixed as to time and duration (although in exceptional situations it might be interrupted). In the Fox and Thomas cases they were free to go wherever they wanted, although normally they stayed near the premises, but in the Carver case they could not do so when down in the mine shaft at lunch period, and in the Tully case they ate at their post of duty, although normal duties were suspended during lunch period and they spent the time for their personal eating and relaxing.
Due to the many witnesses and the voluminous record of their testimony, a detailed discussion is impossible. The plaintiffs-appellants offered witness after witness, practically all of whom were plaintiffs, to the effect that they knew nothing of the establishment of a free and uninterrupted lunch period in November 1945 even though they were plaintiffs in the Williamson suit and benefited by a judgment in their favor, based upon a factual finding which had been established by agreement entered into on January 9, 1947, approximately six months prior to the filing of the present suit, that they had had a free and uninterrupted lunch period since November 1945. On the other hand, many of the plaintiffs, testifying under cross-examination under the Act, stated that they knew of the establishment of a free lunch period in November 1945 and that as a matter of fact they had enjoyed a free and uninterrupted lunch period since that date. There was detailed testimony to the effect that the defendant had established the rule that all employees were entitled to a free and uninterrupted lunch period and if they were called back they were then entitled to an additional free and uninterrupted lunch period, and if for any reason they were unable to obtain the additional time they were entitled to time and a half for the 30 minute lunch period. Of course; it is not only possible but probable that the plaintiffs who testified they knew nothing of the establishment of this lunch period did not know of the agreement which was entered into by the attorneys in the Williamson case, yet, this agreement, if not amounting to an estoppel, is the strongest kind of evidence that a free and uninterrupted lunch period was established in 1945 and in existence on January 9, 1947, the date of the agreed stipulation in the Williamson case. We do not believe that the attorneys for the plaintiffs in the Williamson case did not discuss in detail the agreed stipulation of fact with any plaintiffs in that case or any authorized representative of the plaintiffs in the Williamson case before agreeing to the fact that the employees at the defendant plant enjoyed a free and uninterrupted lunch period from 1945 to the date of the agreement in January 1947.
The plaintiffs, who testified in their own behalf in substance on their contention in this case, stated that they had been called back from lunch many times on many occasions in connection with the production processes of the defendant company. In most all of these instances they were recalled by a fellow employee termed another operator. The record reveals that an operator had no authority to recall another operator, and it is further shown by the defendant’s testimony that the purposes for which these plaintiffs testified they were recalled was not actually necessary to the continuance of production for the reason that time studies by experts had been made and that there were sufficient personnel at all times on each job to take care of any production problem other than an emergency such as an explosion or a fire, etc.
*158 The evidence reveals that these plaintiffs, in fact all the employees in the various TEL (tetra-ethyl-lead) area, had much “standby” time on their hands during the seven hours for which they were paid as working time. Of course, the other hour for which they were paid was made up of two 15 minute smoke periods and two 15 minute change of clothes time, making a total of 8 hours for which the plaintiffs-employees were actually paid.
From a careful reading of the entire testimony in the case, we are lead to the conclusion that no doubt plaintiffs-employees were recalled during their lunch period by fellow operators who were in fact unauthorized to do so to the knowledge of the recalled plaintiffs-employees, as a result of a custom or an understanding between the employees in order that they might finish with their duties without delay.
There is some testimony that some of the plaintiffs-employees were recalled on occasion by their foreman who had authority, however, these instances have been explained by the foremen so as to remove them as proof of plaintiffs’ contention, for example, where an employee had overstayed his time for lunch. The plaintiffs’ testimony would lead one to the conclusion that ruptured discs, which it is unnecessary to explain in detail, were a frequent, common occurrence, and that they were recalled from lunch many times because of them, whereas the defendant company has introduced an exhibit giving the exact number of disc ruptures from 1946 through March 25, 1952. That record shows that in 1946 there were seven ruptured discs of which only two took place during the lunch period. In 1947 there were nine ruptured discs of which only three took place during the lunch period, and in the entire period covering the year 1946 through March 25, 1952, there were only 87 disc ruptures of which only thirty took place during the lunch period, an average of less than five a year. In addition there is testimony of many witnesses on behalf of the defendant that operators were not called back for ruptured discs. There was sufficient personnel to take care of such a situation and in such circumstances clean up men were called in.
The defendant has shown that as a result of the Williamson case it was very careful to provide a free and uninterrupted lunch period, to publicize among its employees the establishment of such a period and their absolute right to a free and uninterrupted lunch period of 30 minutes, has shown by many witnesses that they had full knowledge of this rule and definitely understood that if they should be recalled, which was only to be during a case of emergency, they were then entitled to a 30 minute additional lunch period and in default of this to time and a half. The agreed statement of facts in the Williamson case upon which it was settled and in which the plaintiffs therein, many of whom are plaintiffs herein, received quite a bit of money as a result thereof, plainly stated that the defendant in 1945 had established a free and uninterrupted lunch period which the plaintiffs therein had enjoyed ever since. Furthermore, the defendant has shown that as a result of time studies made by experts it was unnecessary to recall an employee from his lunch period except in case of an emergency. In fact, counsel for plaintiffs argues that plaintiffs-employees were employed to stand by and states that proof of this is the fact that they did stand by most of the time that they were on the plant premises and, therefore, they were employed on that basis. It is true that the plaintiffs-employees did stand by a great part of the working time, but it was only during the eight hours for which they were paid. Defendant has in detail offered testimony to refute that of the plaintiffs to the effect that they were recalled for various reasons during their lunch periods on many occasions by positive testimony that on the occasions and for the reasons given by the plaintiff for their recall during the lunch period it was absolutely unnecessary as the personnel and man power was more than sufficient to handle such situations without the recall of anyone from their lunch. The defendant has also shown that schedules were set up for its employees in the TEL area to obtain a 30 minute free and uninter *159 rupted lunch period except in case of an emergency.
Plaintiffs also offered testimony to the effect that they were not permitted to sleep during their lunch period. On the other hand defendant offered testimony that they were free to sleep during their lunch periods, but on the occasions of which plaintiffs stated they had been waked up and told they could not sleep that they had overslept the 30 minute period or were sleeping during working hours. Defendant’s testimony is to the effect that they are permitted to sleep or do as they please during the lunch period except that they are restricted in athletic activities and “horse play”, neither nor both of which would prove the lack of a free and uninterrupted lunch period as heretofore mentioned. It was true that it was physically impossible for the plaintiffs-employees to eat off of the premises due to the size of the plant and the fact that it would be necessary for them to change their clothes and obtain a pass, all of which would be impossible in the 30 minutes allotted for the lunch period. Plaintiffs-employees had full knowledge of this condition when they sought and gained employment and, in addition, the defendant had no ruling against eating lunch outside the plant if time would permit.
Plaintiffs-employees also testified that they were required during electrical storms to report back to their various posts, whereas the defendant offered positive testimony that only the foremen were required to report back during electrical storms.
We thoroughly agree with the finding of fact by the District Court that the plaintiffs have failed to prove that they did not have a free and uninterrupted lunch period as defined by the authorities heretofore cited.
Returning to the Porter, Culkin and General Electric cases, supra, relied upon by the plaintiffs, and others similar to these cases concerning plant guards and firemen, we find that they can be distinguished from the case under consideration. The major function of plant guards and firemen is not the performance of certain specific, localized industrial duties but to be available in the event of disturbance or fire. This general function they are performing wherever they are on the plant premises even when not at the post where generally stationed. On the other hand, the employees presently before the court have certain specific production duties performed at a specific post of duty, and while much of their time may be on a “standby” basis and nevertheless part of the working hours, when they are away from their post of duty another employee performs their function. While technically they may be available in the event of emergency, the record and the finding of the district court is that in actual fact such emergencies are of rare occurrence. The remote possibility of such interruptions of the lunch period is not of such practical benefit to the employer as to be of significance as an economic factor in the utilization of the lunch period. The record supports the district court’s finding that during this lunch period the employees are relieved of all duties and all supervision by the employer and are free to employ it for whatever personal uses they desire, including not only eating but napping, resting, chatting, subject, of course, to the physical restriction of the plant site and such safety rules as those prohibiting “horse play”. It was testified that the employees could leave the plant site, although due to the extent of the premises this would not be a practical choice.
As to the other cases relied upon by plaintiff, viz., F. W. Stock & Sons, Inc., v. Thompson, supra, Biggs v. Joshua Hendy Corp., supra, Mills v. Joshua Hendy Corp., supra and U. S. v. Ewald Iron Co., supra, they can be distinguished on the ground that an employee on a “stand by” basis in the immediate neighborhood of his machine is performing a practical service for his employer, whereas in the present case employees generally on a large plant premises but away from their immediate post of duty cannot in a practical sense be said to be on a “stand by” basis, especially in view of the employer’s evidence accepted by the District Court that an additional *160 number of employees were hired by the employer in order that on an overall basis relief employees were always available to perform the duties of those employees at lunch. While perhaps in the exceptional event of an emergency the employer would have the benefit of the employee’s services, it is an industrial truism that an emergency suspends all rules; and the fact that an employee, if located, might be recalled from his sleep at. home in the event of an emergency and is therefore theoretically “on call” even while home, does not therefore render all 24 hours of the employee’s day part of his working hours.
Taking all the facts and circumstances of the present case into consideration, the factual picture is much closer to that of the cases relied upon by the defendant-employer, such as Fox v. Summitt King Mines, supra, Tully v. Joshua Hendy Corp., supra, Thomas v. Peerless Carbon Co., supra, and Sunshine Mining Co. v. Carver, supra.
For the above and foregoing reasons the judgment of the District Court is affirmed at the cost of plaintiffs-appellants.