## CHARLES A. SIMS et al. *vs.* AMERICAN ICE COMPANY.

*Negligence—Fire Caused by Sparks from Dinkey Engine—Evidence—Instructions to Jury—Entries Made in Course of Business by Person Beyond the State.*

The defendants, in the course of doing of certain railroad construction work, laid a track within a few feet of plaintiff's ice house and outbuildings, and operated on the track certain dinkey engines and dirt cars. The declaration alleged that these engines were not supplied with spark arrestors or netting; that they were negligently operated, and that plaintiff's house was set on fire and destroyed by sparks thrown out by one of the engines. Upon the trial of the action, *held,* that evidence is admissible to show that the dinkey engines had thrown out sparks shortly before the fire broke out in plaintiff's house, and that these sparks had set fire to combustible material near the track.

*Held,* further, that evidence that engines of a railroad company, operated in the county, had been seen to throw out sparks is not admissible, because that fact is in no way connected with the fire in question.

Entries in a book relating to the inspection of locomotives, made in the course of his duty by a person now absent from the State, are admissible in evidence upon proof of his handwriting.

When the defendant in an action to recover damages for a fire alleged to have been caused by sparks from his engine, offers evidence to show that an engine of a railroad company had thrown out sparks sufficient to have caused the fire, and about the same time, the plaintiff is entitled to offer evidence in rebuttal showing that the fire was not caused by the engine of the railroad company.

In an action where the evidence showed that the defendant operated dinkey engines within a few feet of plaintiff's house; that these engines had no spark arrestors in them, and no netting in the smoke boxes, and that they constantly threw out quantities of sparks near plaintiff's house, the jury was instructed, at the instance of the plaintiff, that if they find that the plaintiff's house was destroyed by fire communicated from the defendant's engines and that the defendant did not exercise reasonable care to avoid, as far as practicable, injury to property along the line of the road upon which his engines were operated, by having said engines properly constructed and in good condition, then their verdict must be for the plaintiff. The jury was also instructed at the instance of the defendant that it was necessary for the plaintiff to prove by a preponderance of testimony, first, that the locomotive of the defendant emitted the sparks that set fire to plaintiff's house, and second, that the defendant was guilty of negligence in the management of the engine that emitted the sparks that set fire to the house. *Held,* that under these prayers, the jury was properly instructed as to the law of the case.

*Decided December 4th, 1908.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*John S. Young* and *M. H. Fahey* (with whom was *Albert Constable* on the brief), for the appellant.

*John C. Rose* (with whom was *Stevenson A. Williams* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The appellee, a body corporate, brought this action against the appellants to recover damages for the destruction by fire of certain property situate on the east bank of the Susquehanna river, in proximity to a railroad operated by the appellants near Frenchtown, Cecil County, Maryland.

The suit was instituted in the Circuit Court for Cecil County, but on suggestion of the defendants, the case was removed to the Circuit Court for Harford County. The second trial of the case resulted in a verdict for the plaintiff for the sum of $8,000, and from the judgment entered thereon the defendants have appealed.

The record in the case presents sixteen bills of exceptions. Fourteen of them relate to the rulings of the Court upon the evidence. The seventh exception was abandoned at the hearing, and the sixteenth was taken to the action of the Court in granting the plaintiff's prayer, and in rejecting the defendants' first, second, third, fourth, fifth, sixth and eleventh prayers, and in overruling the defendants' exception to the plaintiff's prayer.

The defendants' seventh, eighth, ninth and tenth prayers were granted and will be hereafter considered in the discussion of the propositions of law raised on the various exceptions set out in the record.

It appears from the evidence that the appellee, at the time of the fire, was the owner of an ice-house with certain appurtenant buildings, consisting of a stable, engine, boiler house, etc. The ice-storage house contained 6,600 tons of ice, worth $1.11 a ton.

The appellants were engaged at the time of the fire in certain railroad construction work for the Pennsylvania Rail-

road Company, and were operating what are called dinkey engines of about ten ton weight, hauling cars with dirt and other material over tracks laid for the purpose from a point on the P., B. and W. R. R. to a point on the C. & P. D. R. R. These construction tracks were located about six to ten feet distant from the ice-house, and ran along the east front of the property of the appellee, between the Pennsylvania Railroad track and the ice-house. The fire occurred about twenty-four minutes after ten o'clock, on the morning of June 16, 1905, and in the end of the ice-house next to the railroad.

The ice-house measured 90 feet 7 inches from east to west by 160 feet 4 inches from north to south. It was 93 feet 3 inches from the northeast corner of the ice-house to the centre of the Baltimore and Ohio Railroad (the bridge across the Susquehanna River) ; from the northwest corner of ice-house to centre line of Baltimore and Ohio Railroad, is 80 feet, and 64 feet from the northwest corner of the ice-house to the pier of the railroad company. The tracks of the Pennsylvania Railroad also passed along the east side of the ice-house. The nearest of those tracks being about 20 feet from the ice-house.

The declaration alleges that the property was destroyed by fire caused by sparks thrown out by an engine which was operated by the defendants on a railroad in close proximity to the plaintiff's ice-house. The negligence was charged to have consisted in the selection and equipment of the engines furnished and by the lack of ordinary care in the operation of the engines by the defendants' employes.

The first question presented by the record arises upon the first, second, third, fourth, fifth and sixth exceptions, and relates to the admission of testimony of various witnesses to the effect that they had seen the dinkey engines, when working near the plaintiff's property, throw sparks shortly before the fire, and that these sparks had set fire to combustible material near the dinkey tracks.

The Court, we think, properly overruled the objections to this testimony and permitted it to be given to the jury. In

*Annapolis & Elkridge R. R. Co.* v. *Gantt,* 39 Md. 115, and in *Green Ridge Railroad Co.* v. *Brinkman,* 64 Md. 53, this character of testimony was held to be admissible for the purpose of establishing the fact from which the jury may find negligence on the part of the defendant. JUDGE BARTOL, in delivering the opinion of the Court in *Gantt's Case, Supra,* said: Here the evidence was confined to the time of the occurrence, within a week of the happening of the fire on the plaintiff's property, and pointed directly to the condition of the defendant's engines, tending to prove that they were not in suitable repair at the time of the injury, and we think both upon reason and authority it was admissible for the purposes mentioned. All of these exceptions present the same legal question and for the reasons stated we are clearly of opinion that the testimony was properly admitted.

But apart from the admissibility of the testimony objected to in these exceptions, the witness Lewis had previously testified, without objection, that on the morning of the fire, as *on previous mornings,* he saw the dinkey engines of the defendants at work, and just before they got to the ice-houses they would open, exhaust and throw cinders ten or fifteen feet high out of stack, greater the blast more cinders would fly out of the stack, and his testimony was not subsequently excluded.

The testimony contained in the eighth exception was properly rejected. The fact that engines on the Baltimore and Ohio Railroad, while passing through different sections of Harford County, would throw out sparks and fire sufficient to set fire to rubbish and other inflammable materials, could throw no light upon the question whether the fire complained of here was caused by the engines of the defendants. It did not tend to show negligence in the case under consideration and was no way connected with the fire in question. It was too remote and simply tended to prove that an engine was capable of setting fire to property near its railroad.

The ninth, tenth, eleventh, twelfth, thirteenth and fourteenth exceptions were taken to the admission in evidence of certain entries made by one Wall, who had been inspector

of engines in the service of the Baltimore & Ohio, as to the inspection of locomotives made by him.. These entries were made in a book of the B. & O. Railroad and were made at the time of the inspection of the engines. The entries were in the handwriting of Wall, who had left the service of the road and was absent from the State, and his whereabouts unknown. The witness Given testified that they were in the handwriting of Wall and were made in the regular course of official duty.

We find no error in the admission of this testimony. In *Heiskell* v. *Rollins,* 82 Md. 15, it was said: It has long been held, that entries made by a clerk in the regular course of business, he having no interest at the time in stating an untruth, should be received in evidence after the clerk's death on proof of his handwriting, and such entries are equally admissible where the witness is absent from the State. *Reynolds* v. *Manning & Co.,* 15 Md. 523; *Morris & Cc.* v. *Columbia Iron Works,* 76 Md. 357.

The fifteenth exception was taken to the action of the Court in overruling a general objection to certain witnesses being allowed to testify in rebuttal. We do not deem it necessary to go into a recital of the testimony embraced in this exception. An examination of the record will show it was strictly and directly in rebuttal of the evidence by the defendants' witnesses to the effect, that a Baltimore & Ohio Railroad freight train, bound east, passed the east end of the bridge about the time of the fire, throwing out smoke and cinders, and shortly afterwards the ice-house was seen on fire. The evidence was clearly competent for the purposes offered, and being evidence in rebuttal was largely in the discretion of the trial Court.

We come now to a consideration of the rulings of the Court upon the prayers set out in the sixteenth exception. The plaintiff's prayer is as follows: "The jury are instructed that if they shall find from the evidence that the plaintiff's ice-houses with their contents were destroyed by fire communicated from the defendants' engines, and shall further find

that the defendants did not exercise reasonable care and dili-
gence to avoid as far as practicable injury to the property
along the line of the road upon which their engines were
operated by having their said engines properly constructed
and in good condition, then their verdict must be for the
plaintiff."

This prayer as applicable to the facts of this case is entirely
free from objection and was properly granted by the Court.
There is testimony in the record tending to establish every
hypothesis of the prayer, and the special exception, that there
was no evidence that the defendants' engines were not prop-
erly constructed, was rightly overruled. There was evidence
that the dinkey engines had no spark arrestors in them at the
time of the fire; that they had been taken out, and none of
them had netting in their smoke box. There was also evidence
to the effect, that the Tyrone, one of the engines, stopped in
front of the ice-house before the fire, and that it had no spark
arrestor in it. In *Ryan and McDonald* v. *Gross,* 68 Md. 380,
the Court held, it was the duty of the defendants to see that
the spark arrestor was in proper repair, and if it was not in
proper repair, in consequence of which sparks escaped from
the engine and set fire to rubbish along the road, and spread
thence to the plaintiffs' land these facts were sufficient to jus-
tify the jury in finding negligence on the part of the defend-
ants and that the destruction of the plaintiff's property was
the direct and natural consequence of such negligence. But
apart from this, the jury were instructed by the defendants'
ninth prayer, "that to entitle the plaintiff to recover in this
case, it must prove by a preponderance of testimony two facts,
first, that the locomotives of the defendants emitted the sparks
that set fire to the ice-houses of the plaintiff; second, that the
defendants were guilty of negligence in the management of
the engine that emitted the sparks that set fire to the ice-
houses of the plaintiff. And if the testimony in this case
should be such as to leave the minds of the jury in a state of
equipoise as to either of the facts, their verdict must be for
the defendants." And by the defendants' eighth prayer, the

jury were further told that " if from the evidence it is equally probable that the fire originated from any cause, other than the defendants' engines, the defendants are not liable in this action, and their verdict must be for the defendants. That the defendants cannot be made liable in this action on a mere probability that the fire was caused by its engines, but only on the preponderance of proof that it was so caused, and then only upon proof of negligence on the part of the defendants."

The theory of the defendants' case, we think, was fully submitted in their granted prayers, and they obtained all the law to which they were entitled. The defendants' first, second, third, fourth, fifth, sixth and eleventh prayers were properly refused. The first, second, third and fourth prayers were demurrers to the evidence and could not, under the facts of the case, have been granted.

The fifth and sixth prayers submitted the same propositions covered by the defendants' eighth and ninth prayers, and were properly refused. The eleventh prayer was manifestly erroneous. It asserted a proposition not bearing upon the case, and its rejection could not have injured the defendants.

Finding no error in the rulings of the Court, and, as the case was one to be submitted to the jury upon the facts, the judgment will be affirmed.

*Judgment affirmed, with costs.*