SMITH *v.* HERCULES COMPANY ET AL.

[No. 116, October Term, 1953.]

*Decided April 28, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Maurice J. Pressman,* for appellant.

*J. Gilbert Prendergast,* with whom were *Clark, Thomsen and Smith* for The Hercules Company, *Southgate L. Morison,* with whom were *Ober, Grimes and Stinson* on the brief, for Dornach Shipping Company, Ltd. and North Atlantic and Gulf Steamship Company, appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the appellees upon their motions for directed verdicts at the close of the plaintiff's case. The plaintiff, an em-

ployee of the Maryland Ship Ceiling Company, fell and was injured while installing cargo battens or sweat boards in the hold of a British ship, the S. S. Coulbeg, then berthed at pier 5, Locust Point, Baltimore. The ship was owned by Dornach Shipping Company, Ltd. and at the time of the accident under charter to the North Atlantic and Gulf Steamship Company for a voyage to Cuba. When she arrived in Baltimore on September 24, 1950, she discharged a cargo of scrap iron, which did not require battens, but battens were required to provide ventilation for the new cargo. The Maryland Ceiling Company was employed by the agents of the owner to furnish and install them. When the Maryland Company learned through inspection that some of the U-shaped metal clamps, used to support the wooden battens, were missing, it called in the Hercules Company to install clamps where necessary. Such clamps are a part of the ship's gear and were in fact supplied by the vessel from its stores. The basis of the action against the Hercules Company is that it negligently installed the clamps and battens and this caused the injury. The basis of the action against the owners and charterers is that the clamps were defective or improperly installed, in violation of their duty to furnish a safe place to work and a seaworthy vessel.

The testimony shows that the method of installing battens is to place them in fixed clamps or brackets and nail the butts together by means of "scabs," or wooden blocks, starting at the bilge and working upward. As there were spaces of about 12 inches between the boards, they were customarily used by the ship-ceilers as footholds or legholds, instead of ladders or scaffolds. The clamps were of two standard types, one bolted to the ribs and the other manually hooked into holes in the ribs. The boards are sawed to varying lengths to fit, but average about 12 to 14 feet in length, 6 inches in width and 1⅝ inches in thickness. The ribs are 30 inches apart, but the clamps are not put in every rib; they are spaced to support the boards at suitable points.

Naturally, the work on the clamps had to be completed by Hercules before the Maryland employees could install the battens. On September 28, 1950, the appellant was one of a gang of ten men working in hold number 2. Finishing their work there, they went into hold number 1 around 2 P. M. Some of the Hercules men were still there. He saw two of them working in the section where he later fell, standing on the board he fell from, removing old clamps with hammer and chisel. His fall happened in this manner: He was working in a section on the starboard side about 20 feet up with another carpenter. Two others were passing up boards. The foreman was watching them. They had then been working in hold number 1 for about 2 hours. He noticed "a couple of boards" in the adjoining section which were "overhanging the section" he was in. In order to remove them he climbed down and went up in the other section on the "scattered battens that were there." When he was about 20 feet up, the board on which he was standing, gave way, as did the board he was holding on to, and he fell into the bilge with both boards. He did not know who had put the "scattered" battens up, but they had not been placed there by his gang. The board did not break. He did not see any clamps fall, he did not think they did. The foreman, Bialeski, saw the whole thing. He testified he was sitting on the pile of battens in the center of the hold talking to Smith, who was about 20 feet up in the center of a batten supported at both ends by clamps. He described the accident as follows: "He just moved himself a little bit and the cargo batten under his feet flipped right out and the one he was holding came down right behind the other one." The witness did not see anything else fall. The only clamps he saw there were bolted to the ribs. Two of the other carpenters did not see the fall, but saw a clamp of the hooked type lying in the bilge near Smith after the fall. One of them testified he had cleared off the deck sometime before. There were 9 battens in that section, 5 at the bottom, 2 near the center and 2

at the top about 4 feet apart. They did not know who had put them there. The witness, Labinski, an employee of Hercules at the time, testified that in renewing clamps the practice was to temporarily insert battens at intervals in order to climb up. The type of clamp they were installing was not bolted but manually affixed.

We think the evidence is legally insufficient to show negligence on the part of Hercules. The main argument that the fall was caused by a defective clamp, or one that was improperly installed, is controverted by the plaintiff's own statement and that of his foreman, that they saw no clamps fall. The testimony as to the clamp lying near Smith in the bilge after he fell does not support a contrary inference that this clamp was the one that had supported the board. It may have been one of the original clamps that were missing, or one of those removed by the Hercules men, or one not yet installed. It may have been knocked out by the falling boards. It was not one of the bolted type. Moreover, there is no evidence whatever that Hercules installed the particular clamps that supported those boards. Their employment called for the replacement of missing ones.

There is no direct evidence that the Hercules men put up the battens that fell. They may have been placed there by Maryland incident to its inspection. Nor is there any evidence that they were improperly placed in the first instance. The plaintiff testified that the board from which he fell had previously supported two of the Hercules men, and that some of the boards extended into the adjoining section. The board from which he fell may have been pushed over by Maryland men in another section. The boards were not secured at the ends and the metal workers would have no means of securing them. They were simply slipped into the clamps and free to move in a lateral direction. It was not the duty of Hercules to put up battens, they simply used them temporarily for their own convenience. Moreover, the testimony is that the board did not fall until Smith "moved himself a little bit * * * and the cargo

batten * * * flipped right out." The evidence does not "reasonably * * * exclude any inference except that of negligence" on the part of the Hercules Company. *McVey v. Gerrald,* 172 Md. 595, 602. See also *Griffith v. Pullman Co.,* 142 Md. 514, 519.

The appellant's reliance upon the presumption of *res ipsa loquitur* does not supply the defects in the proof. In *Walker v. Vail,* 203 Md. 321, 101 A. 2d 201, 204, recovery against the installer of an overhead door mechanism was denied, where the unknown cause of its failure and the resultant fall could just as reasonably be attributed to another, or an intervening, agency as to faulty installation. See also *Lee v. Housing Authority of Baltimore City,* 203 Md. 453, 101 A. 2d 832, reviewing the authorities. Since we base our conclusion on a failure to make out a *prima facie* case of primary negligence on the part of Hercules, it is unnecessary to discuss the contentions as to assumption of risk or contributory negligence. The latter, of course, would not be a complete defense, if the maritime law is applicable. See *Pope & Talbot, Inc. v. Hawn,* 346 U. S. 406, 98 L. Ed. 101; 74 Sup. Ct. 202.

The appellant also contends that the court improperly excluded evidence tending to support the charge of negligence. The witness, Labinski, an employee of Hercules, was not permitted to testify that he had fallen in the same hold on the day of the accident because of a defective clamp. We find no error. Evidence of other accidents, particularly where the circumstances are not identical, have little probative value and are calculated to prejudice the jury. *Salisbury Coca-Cola Bottling Co. v. Lowe,* 176 Md. 230, 241; *Wise v. Ackerman,* 76 Md. 375, 390. Another question put to this witness as to the condition of the clamps throughout the hold was properly excluded as too general. The plaintiff's answer to a question: "What made you come down?" that "it had to be a faulty clamp," was properly stricken as a mere conclusion, and in any event the plaintiff's attorney stated "I'll consent it be stricken." Other ques-

tions as to what could cause a batten to come out of its supporting clamps were properly excluded as matters of common knowledge not calling for expert opinion under the circumstances. Cf. *Long v. Joestlein*, 193 Md. 211, 220.

What we have said in regard to the claim of negligence as against Hercules applies to the claim of negligence as against the other appellees. None of the ship's personnel participated in the operation, except to supply the new clamps. It is not contended that they supervised or directed the work, that they ever entered the hold during its progress, or that they were aware of the manner of its performance. But the appellant argues that the owner is responsible for breach of a duty to furnish a safe place to work. Such duty is not absolute; it only requires the use of reasonable care to furnish a reasonably safe place to work. *Ove Tysko v. Royal Mail Steam Packet Co.*, 81 F. 2d 960 (CCa 9th) ; *Brabazon v. Belships Co., Ltd.*, 202 F. 2d 904 (C.A. 3d) ; *B. & O. S. W. R. Co. v. Carroll*, 280 U. S. 491. Clearly, the condition of the hold was not inherently dangerous when the repairmen and carpenters came aboard, as in *Hawn v. Pope & Talbot, Inc.*, 198 F. 2d 800, 804 (C. A. 3d), (aff. in *Pope & Talbot, Inc. v. Hawn, supra.*) There is no evidence that the accident was caused by anything supplied by the vessel, or that there was any danger to workmen using reasonable skill and care. Moreover, there is abundant authority for the proposition that where the work is turned over to a competent, independent contractor, the owner would not be liable for negligence of the latter in the manner of its performance. *Surry Lumber Co. v. Zissett*, 150 Md. 494; *Le Vonas v. Acme Paper Board Co.*, 184 Md. 16; *Bohlen v. Glenn L. Martin Co.*, 193 Md. 454; *Joseph R. Foard Co. v. State*, 219 F. 827 (CCA 4th).

The claim of unseaworthiness is based upon an absolute liability imposed by the maritime law. Originally only applicable to seamen, *Mahnich v. Southern S. S. Co.*, 321 U. S. 96, the doctrine has been extended to stevedores,

*Seas Shipping Co. v. Sieracki*, 328 U. S. 85, and to ship carpenters. *Pope & Talbot, Inc. v. Hawn ,supra*. However, the burden of proving unseaworthiness still rests upon the plaintiff. For present purposes it is unnecessary to distinguish between the possible liability of the owner, and the charterer for a voyage where control and operation of the ship remain in the hands of the owner, as in the instant case. See *Poor, Charter Parties* (3d ed.) Sec. 14 and *Robinson* on *Admiralty*, p. 614. The basis of the claim in the instant case is that the fall was caused by a defective clamp furnished by the vessel. As we have pointed out, there is no evidence to support such a finding. Nor is there any legally sufficient evidence that the clamps were not properly installed, or that the fall was caused thereby. The evidence is that the board "flipped out" of the supporting clamps. The plaintiff himself testified that the clamps did not fall.

Finding no evidence legally sufficient to hold any of the defendants in this case, the judgment must be affirmed.

*Judgment affirmed, with costs.*