818 A.2d 237

Albert LAI

v.

**Betty SAGLE, Personal Representative of the Estate of Thelma Giffin, et al.**

No. 72, Sept. Term, 2002.

Court of Appeals of Maryland.

March 10, 2003.

Frederick W. Goundry, III (Varner & Goundry, on brief), Frederick, for petitioner.

L. Teri Spradlin–Dahn, Annapolis, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

HARRELL, Judge.

## I

Courts often are reluctant to declare brightline rules or standards. There are good reasons for this usually. In this case, we overcome that reluctance.

On 27 August 1999, Respondent, Betty Sagle, individually and as personal representative of the estate of her mother, filed a medical malpractice action in the Circuit Court for Washington County. The defendants were Albert Lai, M.D., and Washington County Hospital Association. Washington County Hospital Association penultimately was dismissed as a defendant, and the case was tried against Dr. Lai only. The jury returned a verdict in the amount of $131,500 in favor of Respondent in her capacity as personal representative.

Dr. Lai timely noted an appeal to the Court of Special Appeals, raising a single question:

Did the trial court abuse its discretion by not granting defendant's motion for mistrial after plaintiff's counsel remarked during opening statement that defendant had been sued five times for malpractice in another state?

In an unreported opinion, the Court of Special Appeals, by a divided panel, affirmed the judgment of the Circuit Court. On 13 August 2002, Petitioner here, Dr. Lai, sought a writ of certiorari from this Court, which petition was granted. *Lai v. Sagle,* 371 Md. 261, 808 A.2d 806 (2002).[1]

## II.

While the allegations of the claimed malpractice are complex, the facts relevant to the issue before us are not. At some point in time-the exact date of which was a matter of dispute between the parties-the gallbladder of Thelma Giffin, then age 88, became inflamed acutely. Ms. Giffin was taken to the Washington (County) Hospital Center on 26 November 1996, where she came under the care of Dr. Lai. On 3 December 1996, Dr. Lai removed Ms. Giffin's gallbladder, which was found to be gangrenous. Two weeks later, Ms. Giffin died as a result of multi-system organ failure.

At the inception of the jury trial, the attorney for Dr. Lai objected to a statement (not directly involving the issue before us) made during Sagle's counsel's opening statement.[2] A

---

1. The petition framed the issue as:

   This is an action for alleged medical malpractice. In her opening statement, Plaintiff's counsel told the jury: "[W]hen Dr. Lai was practicing in Michigan for eight years, he was sued five times for malpractice." Defendant's counsel immediately objected and moved for a mistrial, which was denied. Should this Court grant certiorari given that the Court of Special Appeals failed to follow the relevant case law and, in so doing, has sanctioned the "deliberate" and "wrongful" conduct of Plaintiff's counsel?

2. The parties made no motions *in limine* regarding any anticipated evidentiary questions. Thus, unaware until the objection was lodged during plaintiff's opening statement that any such problem existed, the

bench conference followed. During that bench conference, another issue arose as to whether mention could be made by Sagle's counsel of prior malpractice suits against Dr. Lai. The trial judge stated:

> Well, I will deal with it at some time during the lunch recess because we're not going to get this kind of testimony until clearly after lunch, probably even into tomorrow. Why don't you pull the requisite parts of the deposition? I'll look at it.

Sagle's counsel said "okay" and resumed her opening statement.

> [Sagle's Counsel]: [3] Dr. Lai moved to Hagerstown in August of 1994 at the invitation of his friend, Dr. Su. He never looked for any other opportunities for other practice environments. By the way, when Dr. Lai was practicing in Michigan for eight years, he was sued five times for malpractice.
>
> [Lai's Counsel]: Objection.
>
> [The Court]: Sustained.
>
> [Sagle's Counsel]: From August '94 through No ...
>
> [The Court]: The jury is instructed that opening statements are not evidence and it's only a matter or manner in which counsel can describe to the jury what he or she intends to

---

trial judge suggested that Sagle's counsel make only an oblique reference to the topic of debate-the status of Dr. Lai's hospital privileges at various points in his professional career-in her opening statement and that he would rule on any objection lodged later in the trial when such proposed evidence was offered. The judge said:

> I'm not going to sit here and read a deposition right now while ...
> I would suggest that you move forward and somehow in your opening say that his credentials will be fully developed on the stand because I don't know what's going to be admissible and what's not going to be admissible. I can't tell you that right now without seeing the deposition.

Although the topic of this initial evidentiary dust-up between the attorneys did not involve the appellate issue of concern to us, how the trial judge handled it presaged for trial counsel how similar objections during opening statement would be handled.

**3.** Sagle's appellate counsel is not the same person as her trial counsel.

prove. It's not in evidence at this point and is not to be considered at this point. We have not taken evidence.

[Lai's Counsel]: Your Honor, may I approach?

[The Court]: All right.

[Lai's Counsel]: Your Honor, I'm going to move for a mistrial at this point. I think that she's polluted the waters and she's done it deliberately. I would have ... I would have moved this *in limine* had I know that she was going to bring this up in opening statement. She's alluded to two improper things. One, she clearly just went right on the record and polluted the waters in this case. There is not way that anything can be redeemed about it at this point. I'm going to move for a mistrial.

[Sagle's Counsel]: Your Honor, I can absolutely, positively do this when Dr. Lai is up on the stand. That is part of my cross-examination. I can absolutely bring up every single time he's been sued for malpractice and what the outcome of it was, not getting into particulars, but can (inaudible). [Lai's Counsel] made no objections [at deposition] whatsoever when I was questioning him about this. And in fact, I've got to tell you Dr. Lai volunteered this information about the infection control stuff at the hospital. I didn't ask it. He volunteered.

[Lai's Counsel]: Has nothing to do with the malpractice.

[The Court] How does ... How are prior malpractice actions relevant to this case?

[Sagle's Counsel]: It shows that he has this ongoing phenomena of negligent care and treatment.

[The Court]: My recollection, I'll look at the rules, my recollection is that you have to show habit, modus operandi, or some other regular course. Other ... other actions are not admissible.

[Sagle's Counsel]: What could be more regular than being sued five times in the course of an eight-year practice in Battle Creek, Michigan?

[The Court]: I don't think it's admissible. On the other hand, I will look at the rules, but why are we getting into all

of these things that are potentially admissible or inadmissible in opening? Why is this necessary?

[Sagle's Counsel]: I can go right on through your Honor.

[The Court]: All right. Motion for mistrial is denied. I don't think it's polluted. I told the jury that the . . . they're not to consider it at this point.

[Lai's Counsel]: At this point, I mean at this point, their first witness is going to be [Dr.] Udekwu. If she's taking this approach that she's going to ask . . . I am of the opinion and always of the belief that prior malpractice cases are not admissible and are not . . . have no relevance and no basis in the case. Udekwu has four medical malpractice cases that have been filed against him. Am I then permitted to ask Dr. Udekwu about all these malpractice cases? It would be totally irrelevant and would get into the low . . . a trial of the lowest order. And I think that she's already . . . she has already done. She's planted the seed that caused enough trouble and the problem is that now we have to be on the defensive about explaining why these . . . Some of these were totally frivolous malpractice cases.

[The Court]: No you don't. No you don't. You can trust the jury to do its job. And its job is to consider the evidence and I'm going to remind them of that at various times through the proceedings, that evidence is only what they hear from the witness stand. And clearly if it does not come in throughout the trial, you can certainly address that in closing argument to the jury and say, "By the way, [Respondent's counsel] told you . . . did she prove it?" The question is whether she has or hasn't.

[Lai's Counsel]: My objection is still . . .

[The Court]: Overruled.

The trial continued. On three subsequent occasions the trial judge instructed the jury generally, but without specific relation to Sagle's counsel's reference in her opening statement to Dr. Lai's prior alleged malpractice experiences, that its decision must be based upon the evidence presented in the case and that the statements and arguments of counsel were

not evidence. The jury returned its verdict on 5 October 2000, finding that Dr. Lai was negligent in his treatment of Mrs. Giffin and awarded $131,500 in damages.

The majority opinion of the Court of Special Appeals observed:

> An attorney should not mention in opening statement facts that counsel knows are irrelevant and hence inadmissible. And, the fact that Dr. Lai had been sued five times previously had no relevance, whatsoever, to the issue of whether he was guilty of negligence in his treatment of Ms. Giffin. The fact that a doctor is sued for malpractice obviously does not demonstrate that he was ever guilty of malpractice. Counsel's remark had at least the potential to poison the minds of the jurors against the defendant. We concur with appellant that plaintiffs' counsel, in the opening statement, deliberately and wrongfully attempted to prejudice the jury against Dr. Lai in [her] opening statement.

Nevertheless, the majority of the intermediate appellate court panel held that the trial judge did not abuse his discretion in denying Dr. Lai's motion for a mistrial, holding that the curative instructions given by the trial judge were sufficient to cure the prejudice.

The dissent, alluding to Md. Rule 5–404(b)("Evidence of other ... wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."),[4] reasoned that a mistrial was warranted under the facts of this case, pointing out:

> Occasionally cases arise in which a trial court's denial of a motion for mistrial constitutes an abuse of discretion. *Med. Mut. Liab. Ins. Soc'y of Maryland v. Evans*, 330 Md. 1, 4, 622 A.2d 103 (1993). In my view, this is such a case. When a motion for mistrial is denied, and the trial judge gives an

---

4. The dissent in the Court of Special Appeals, by the use of the introductory signal "See," cited to Rule 5–404(b) as authority clearly supporting the proposition that "[w]ell-settled law precludes admission of evidence of this nature [i.e., prior malpractice litigation] under the 'propensity' rule."

instruction designed to cure the prejudice arising from the facts that improperly have been disclosed to the jury, we must determine " 'whether the evidence was so prejudicial that it denied the [litigant] a fair trial;' that is, whether 'the damage in the form of prejudice to the [litigant] transcended the curative effect of the instruction.' " *Id.* at 19, 622 A.2d 103 (quoting *Rainville v. State,* 328 Md. 398, 408, 614 A.2d 949 (1992), in turn quoting *Kosmas v. State,* 316 Md. 587, 594, 560 A.2d 1137 (1989)). In my opinion, the damage to appellant from appellee's counsel's announcing to the jury in opening statement that appellant had been sued for malpractice five times transcended the curative effect of the trial court's instructions on this point.

## III

Before considering the issue presented in the certiorari petition, we first address Respondent's Motion to Dismiss, filed as part of her brief. Respondent contends that Petitioner waived any right to challenge in an appellate forum Respondent's Counsel's opening remarks by failing to renew his motion for mistrial on any of the three later occasions that the trial judge reminded the jury generally that opening and closing remarks and statements or arguments of counsel were not evidence, nor did Petitioner renew his objection or motion at the close of all of the evidence. Respondent argues that these failures constitute a waiver of the present appellate issue, and asks us to dismiss this case. We shall deny the motion.

Maryland Rule 3–517 states, in relevant part:

(c) *Objections to other rulings or orders.* For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take *or* the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is

made, the absence of an objection at that time does not constitute a waiver of the objection.

(d) *Formal exceptions unnecessary.* A formal exception to a ruling or order of the court is not necessary.(emphasis added).

█ Petitioner here requested a mistrial after noting his objection to Respondent's counsel's pertinent opening statement remark, and, most importantly, persisted in his objection despite the trial court's proposed remedy of giving a series of supposed curative instructions. He continued to object until cut-off by the trial judge, signaling the end of discussion on that issue at this trial. Petitioner did all that was required, under the circumstances, to preserve the issue for our consideration. *Hill v. State,* 355 Md. 206, 218–26, 734 A.2d 199, 206–210 (1999) ("When, as here, however, (1) the motion is not unduly delayed and timeliness is not raised as a defense in the trial court, (2) the trial court does not consider timeliness, even as an alternative ground, but denies the motion on the ground that *no* further relief is called for, (3) no prejudice to the court or either party is indicated, and (4) the appellate court determines that the complaint underlying the motion is valid, a complaint that the motion was improperly denied should be addressed on appeal and not found unpreserved.")(emphasis in original); *Farley v. Allstate Ins. Co.,* 355 Md. 34, 57–58, 733 A.2d 1014, 1026 (1999) (finding that to preserve an issue for appeal, counsel is required to object and request specific relief); *Lattisaw v. State,* 329 Md. 339, 343–44, 619 A.2d 548, 550 (1993)(counsel's disagreement with the trial court's view of an objection was sufficient to make known counsel's "objection to action of the court" in order to preserve the issue for appeal). See *Anderson v. Litzenberg,* 115 Md. App. 549, 568–70, 694 A.2d 150, 159–60 (1997) (discussing at length the requirements for objections and preserving issues for appeal).

## IV

We now turn to Petitioner's assertion that the trial court abused its discretion by failing to grant Petitioner's motion for

a mistrial after the reference to the prior malpractice actions against Petitioner was published by Respondent's counsel to the jury during her opening statement. Rule 5–404 ("Character evidence not admissible to prove conduct; exceptions; other crimes")(b) of Title 5 ("Evidence"), Chapter 400 ("Relevancy And Its Limits") of the Maryland Rules states, in relevant part:

> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

As yet, it has not been determined whether Rule 5–404(b) applies to civil cases. This issue was argued previously to this Court in *Lewin Realty III, Inc. v. Brooks*, 138 Md.App. 244, 771 A.2d 446 (2001), *cert. granted, Brooks v. Lewin Realty III, Inc.*, 365 Md. 266, 778 A.2d 382 (2001), which case has not been decided. We need not resolve this question here. To the extent that 5–404(b) may apply, such a determination merely would reinforce our opinion *infra.* To the extent that it may not apply, it is of no material moment to the present case, as Rules 5–402 [5] and/or 5–403 [6] certainly do.

Petitioner's argument, in sum, is that Respondent's act of alerting the jury to Dr. Lai's involvement as a defendant in prior malpractice suits was so prejudicial that Dr. Lai was

---

**5.** Rules 5–402 states:

> Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible.

**6.** Rule 5–403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the damage of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

denied any opportunity for a fair trial, and therefore the trial court abused its discretion by failing to grant Petitioner's motion for a mistrial. In *Med. Mut. Liab. Ins. Soc'y of Maryland v. Evans*, 330 Md. 1, 19–24, 622 A.2d 103, 112–114 (1993)(some internal citations omitted), we reviewed generally the proper analysis for a motion for mistrial generally:

> Whether to order a mistrial rests in the discretion of the trial judge, and appellate review of the denial of the motion is limited to whether there has been an abuse of discretion. Where the motion is denied and the trial judge gives a curative instruction, we must determine " 'whether the evidence was so prejudicial that it denied the defendant a fair trial;' that is, whether 'the damage in the form of prejudice to the defendant transcended the curative effect of the instruction.' "

\* \* \* \* \*

Judge Cole, writing for this Court in *State v. Cox*, 298 Md. 173, 468 A.2d 319 (1983), explained that "[w]e have allowed [inquiry about prior bad acts] to be conducted when the trial judge is satisfied that there is a reasonable basis for the question, that the primary purpose of the inquiry is not to harass or embarrass the witness, and that there is little likelihood of obscuring the issue on trial." *Id.* at 179, 468 A.2d at 322.

\* \* \* \* \*

To permit counsel to obtain a ruling on whether proposed proof will be admitted, and in order to avoid mistrials, contemporary practice recognizes the motion *in limine*. See *Prout v. State*, 311 Md. 348, 356, 535 A.2d 445, 449 (1988) ("[T]he real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably infect the fairness of the trial."). . . . No one wants to waste the investment of parties, witnesses, counsel, jurors, and trial court by having the proceedings result in a mistrial. The way to avoid that result is the motion *in limine*, particularly where, as here, an earlier trial had aborted because of improper questioning by the same attorney.

■ It has been observed that the primary purpose of an opening statement is to apprise, with reasonable succinctness, the trier of fact of the questions involved in the case it is about to hear, and what the parties expect to prove, so as to prepare the trier of fact for the evidence to be adduced. *Clarke v. State,* 238 Md. 11, 19, 207 A.2d 456, 460 (1965). Where a trial has progressed only so far as opening statements when a prejudicial error occurs, the waste of "the investment of parties, witnesses, counsel, jurors, and trial court by having the proceedings result in a mistrial" is minimal when compared with the possible taint on the overall proceedings. Therefore, if remarks made by an attorney in an opening statement include "facts" that plainly are inadmissible and highly prejudicial to another party, a mistrial ordinarily would be one of the principal remedies considered, upon motion by the adversely affected party.[7]

## V

We must determine whether, in plaintiff's opening statement in a medical malpractice trial, bringing to the attention

---

**7.** *See Attorney Grievance Comm'n v. Alison,* 349 Md. 623, 627–30, 709 A.2d 1212, 1213–15 (1998); *Clarke,* 238 Md. at 20, 207 A.2d at 460–61 (1965); *Derby v. Jenkins,* 32 Md.App. 386, 397, 363 A.2d 967, 974 (1976); *Harding v. Deiss,* 300 Mont. 312, 3 P.3d 1286, 1290–91 (2000); *White v. Consolidated Freightways Corp.,* 766 So.2d 1228, 1232–33 (Fla.Dist.Ct.App.2000); *Sawicki v. Kim,* 112 Ill.App.3d 641, 67 Ill.Dec. 771, 445 N.E.2d 63, 66–67 (1983). Other responses, including genuinely curative instructions in a jury trial, also may be appropriate. *See, e.g.,* Maryland Rules of Professional Conduct, Rule 3.4(e) ("A lawyer shall not, in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence. . . ."); *See also* Maryland Rule 1–341 ("Bad faith-unjustified proceeding")("In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.") Neither Petitioner nor the Circuit Court considered the possible applicability of the latter provisions to the relevant facts of this case (nor do we suggest they were required to). *See also, e.g., Persichini v. William Beaumont Hosp.,* 238 Mich.App. 626, 607 N.W.2d 100 (1999).

of the jury incidences of prior malpractice actions against the defendant doctor is error. If it is error, flowing from such a conclusion is the related question of whether the prejudice worked thereby requires the grant of a mistrial, upon timely motion, or whether it may be cured by an appropriate instruction or series of instructions. To resolve these questions, we shall employ the standards associated with the doctrine of relevance. Those standards are stated succinctly in *Myers v. Celotex Corp.*, 88 Md.App. 442, 594 A.2d 1248 (1991), *cert. denied, Fibreboard Corp. v. Myers*, 325 Md. 249, 600 A.2d 418 (1992), to wit:

> Evidence, to be admissible, must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation; it is relevant if it is sufficiently probative of a proposition that, if established, would have legal significance to the litigation. Evidence is relevant, therefore, if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence, and a fact is material if it is of legal consequence to the determination of the issues in the case, which are dependent upon the pleadings and the substantive law.
>
> \* \* \* \* \*
>
> The general rule in this State is that all evidence that is relevant to a material issue is admissible except as otherwise provided by statutes or by rules applicable in Maryland courts. Relevant evidence may be excluded if the trial court [ ] believes that its probative value is substantially outweighed by the dangers of unfair prejudice.

*Myers*, 88 Md.App. at 454, 594 A.2d at 1254. *See* Md. Rule 5–401; *Snyder v. State*, 361 Md. 580, 590–92, 762 A.2d 125, 131–32 (2000); *Smallwood v. Bradford*, 352 Md. 8, 26–27, 720 A.2d 586, 595–96 (1998).

■ In negligence cases, we consistently have held that evidence of prior acts of alleged negligence are substantially prejudicial in nature, and is only admissible for limited purposes, similar in nature to those circumstances recognized in

Rule 5–404(b), *supra* at 373 Md. 316, 818 A.2d at 243. *See Locke, Inc. v. Sonnenleiter,* 208 Md. 443, 447–51, 118 A.2d 509, 511–13 (1955). In no instance, however, is such evidence admissible to prove the negligence alleged in the immediate case. For example, in *Nesbit v. Cumberland Contracting Co.,* 196 Md. 36, 41–43, 75 A.2d 339, 341–42 (1950), we observed:

> In civil cases involving negligence there can be no question of motive or intent and the relevancy of prior convictions of traffic violations can hardly be maintained, unless upon the broad ground that they show a predisposition or a negligent character which Wigmore seems to adopt. But it has long been established in Maryland that such testimony cannot supply proof of negligence in the case on trial. In *Baltimore & O.R. Co. v. State, to Use of Black,* 107 Md. 642, 655, 69 A. 439, 444,[;] [107 Md. 642,] 72 A. 340, it was held error to permit questions as to the plaintiff's "habits with reference to being a careful and cautious driver or otherwise." *See also American Straw Board [Strawboard] Co. v. Smith,* 94 Md. 19, 50 A. 414. In *General Exchange Insurance Corp. v. Sherby,* 165 Md. 1, 7, 165 A. 809, it was held that a conviction for reckless driving, growing out of the same accident as the civil suit, was properly excluded as tending to confuse the jury. To the same effect, see *Eisenhower v. Baltimore Transit Co.* 190 Md. 528, 59 A.2d 313, 319. In *Davis v. Gordon,* 183 Md. 129, 132, 36 A.2d 699, 156 A.L.R. 1109, it was held that questions as to whether the defendant had a driver's license at the time of the accident, and whether his license had been revoked on account of a previous accident, were rightly excluded as tending to prejudice and inflame the jury.

*See Smith v. Hercules Co.,* 204 Md. 379, 385, 104 A.2d 590, 593–94 (1954)(Evidence of other accidents, particularly where the circumstances are not identical, have little probative value and are calculated to prejudice the jury). The majority in the Court of Special Appeals in the present case similarly observed:

> In *Cumberland v. Turney,* 177 Md. 297[, 9 A.2d 561] (1930 [1939]), the Court stated the prevailing rule of law that

evidence of prior similar occurrences is only admissible for certain limited purposes but not for the purpose of showing negligence on the part of the accused nor to prove the cause of a specific occurrence. Similarly, in *Salisbury Coca–Cola Bottling Co. v. Lowe,* 176 Md. 230[, 4 A.2d 440] (1939), the Court held that when separate occurrences are independent and there is no necessary evidentiary connection between them, the admission of evidence of prior occurrence "instead of aiding the jury in the solution of the subject of inquiry, tended to excite its prejudice, and mislead it." *Id.* at 241[, 4 A.2d 440] (citing *Wise v. Ackerman,* 76 Md. 375[, 25 A. 424] (1892); *Simes [Sims] v. American Ice Co.,* 109 Md. 68[, 71 A. 522] (1908)). In *Smith v. Hercules Co.,* 204 Md. 379[, 104 A.2d 590] (1954), the Court held that "evidence of other accidents, particularly where the circumstances are not identical, have little probative value and are calculated to prejudice the jury." *Id.* at 385, 104 A.2d 590 (citations omitted).

■ Such "evidence" also is not probative of a physician's professional qualifications, or lack thereof. We have considered previously a situation where a plaintiff in a medical malpractice trial attempted to call into question the defendant physician's qualifications by improperly introducing irrelevant and prejudicial material. In *Dorsey v. Nold,* 362 Md. 241, 250–51, 765 A.2d 79, 84 (2001), we observed:

... the general rule is that "a physician's inability to pass a medical board certification exam has little, if any, relevance to the issue of whether the physician complied with the standard of care required in his or her treatment of a patient." *Gipson v. Younes,* 724 So.2d 530, 531–32 (Ala.Civ. App.1998). *See also Campbell v. Vinjamuri,* 19 F.3d 1274, 1276–77 (8th Cir.1994); *Douglas v. University Hosp.,* 150 F.R.D. 165, 171 (E.D.Mo.1993); *Jackson v. Buchman,* 338 Ark. 467, 996 S.W.2d 30, 34 (1999); *Williams v. Memorial Medical Center,* 218 Ga.App. 107, 460 S.E.2d 558, 560 (1995); *Beis v. Dias,* 859 S.W.2d 835, 838–39 (Mo.Ct.App. 1993). We agree with that view. There could be many reasons why a physician failed all or part of a board

certification examination; the fact of failure makes it neither more nor less probable that the physician complied with or departed from the applicable standard of care in the diagnosis or treatment of a particular patient for a particular condition.

A similar conclusion is warranted where, as here, the issue involves instances of past malpractice litigation implicating the defendant doctor in the case under review. There could be any number of reasons why Dr. Lai was sued, and not all, if any, of them may have been legitimate. The fact of prior litigation has little, if any, relevance to whether he violated the applicable standard of care in the immediate case. The admission of evidence of prior suits, instead of aiding the fact finder in its quest, tends to excite its prejudice and mislead it.[8] We share the view of the dissent in the Court of Special Appeals when it observed: "I cannot conceive of a more damaging event, in a medical malpractice trial, than disclosure to the jury in opening argument that the defendant doctor had previously been sued multiple times for malpractice."

Admitting purported similar acts in evidence is similar to admitting evidence of prior arrests in criminal trials. The reason evidence of prior arrests is excluded from criminal trials is that the occurrence of an arrest is not proof of the commission of a crime; in the same way, prior lawsuits are not proof of medical malpractice then or now. Evidence of prior

---

8. Nor does the fact that an individual has been sued multiple times constitute habit or routine practice under Rule 5–406, a rule which is patterned after the corresponding federal rule. *Weil v. Seltzer,* 873 F.2d 1453, 1459–61 (D.C.Cir.1989)(Doctors treatment of five former patients does not constitute habit as envisioned by federal Rule 406); *Glusaskas v. Hutchinson,* 148 A.D.2d 203, 544 N.Y.S.2d 323, 324–25 (1989)(Evidence of other successful surgeries is excluded in medical malpractice cases. The general rule in New York is that evidence of a person's habitual conduct under similar circumstances in respect to using care is inadmissible for the purpose of raising an inference that he exercised the same amount of caution on the occasion when the injury in question was sustained. Such evidence is excluded for the reason that it raises too many collateral issues and, also, because it borders too closely on character evidence, which is not admissible in civil cases.).

arrests is inadmissible in criminal trials to prevent the jury from concluding that the defendant has a propensity for committing crimes; following the same reasoning, similar acts of prior malpractice litigation should be excluded to prevent a jury from concluding that a doctor has a propensity to commit medical malpractice.[9]  Our review of cases from other jurisdictions indicates that in those instances where this issue has been addressed squarely, courts have found consistently that evidence of prior malpractice is either inadmissible as irrelevant or excessively prejudicial. *See Laughridge v. Moss,* 163 Ga.App. 427, 294 S.E.2d 672, 674 (1982); *Herbstreith v. de-Bakker,* 249 Kan. 67, 815 P.2d 102, 109 (1991); *Cerniglia v. French,* 816 So.2d 319, 322–25 (La.Ct.App.2002); *Tramontin v. Glass,* 668 So.2d 1252, 1256–57 (La.Ct.App.1996); *Persichini v. William Beaumont Hosp.,* 238 Mich.App. 626, 607 N.W.2d 100, 105–106 (1999); *Jones v. Tranisi,* 212 Neb. 843, 326 N.W.2d 190, 192 (1982); *Folgate v. Brookhaven Memorial Hosp.* 86 Misc.2d 191, 381 N.Y.S.2d 384, 386 (App.Div.1976).

## VI

Rule 5–102 ("Purpose and construction") of the Maryland Rules governing "Evidence" states:

> The rules in this Title shall be construed to secure fairness in administration, eliminate unjustifiable expense and delay, and promote the growth and development of the law of

---

**9.**  We point out that such evidence ordinarily would not be proper even for purposes of impeachment or as rebuttal evidence, unless the defendant doctor injected this topic into the trial, for example, by testifying that he or she had never been sued for malpractice.  Because such "negative evidence" is itself inadmissible, the need to impeach or rebut it never arises.  *See Blue Circle Atlantic, Inc. v. Falcon Materials, Inc.,* 760 F.Supp. 516, 522 (D.Md.1991)(Evidence of a lack of complaints is inadmissible, because its probative value, if any, is far outweighed by the prejudicial effect of such evidence.); *Williams v. Naidu,* 168 Ga. App. 539, 309 S.E.2d 686 (1983)(Doctors testimony that they had never been sued before inadmissable as it is tantamount to saying that they had never been negligent as medical practitioners, from which it is inferable that they were not negligent in treating appellant.).  *See also supra* n. 8.

evidence to the end that the truth may be ascertained and proceedings justly determined.

One means of insuring that judicial proceedings are not unjustly determined, fairness of administration is fostered, and the rules governing the admissibility of evidence made predictable and consistent in their application, is through the use of brightline rules in appropriate circumstances. The advantage of a brightline rule lies in its certainty and uniformity in application, though at some price. As we observed in *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 438–39, 677 A.2d 73, 76 (1996):

> Objective standards and bright-line rules ... are the very keys to predictability, in the sense that everyone is treated in the same manner and everyone knows or can discover the rules in advance of their application. By their very nature, though, such rules and standards cannot make exceptions for every scenario which might arise. First, no lawmaker could construct a statute which foresaw each individual application of the statute and exception which might present itself. In addition, a statute which attempted to address not only the rule but all its possible exceptions would likely lose its valuable characteristic of predictability, because it would be that much more subject to manipulation in a courtroom than a statute which merely stated the rule and any major exceptions. Moreover, bright-line rules by definition cannot depend upon a factfinder's case-by-case assessment of the subjective knowledge of a person.

Unless clearly admissible for some limited purpose under the rubric of Rules 5–404 and 5–403, we can conceive of no instance where making a jury aware in a malpractice trial, whether in statements of counsel or through proffered evidence, of prior malpractice litigation against a defendant doctor would be permissible. *See* n. 10, *supra.* As such, the potential downside of a brightline rule appears absent from the circumstances before us. We therefore hold that mention by the plaintiff in opening statement in a medical malpractice jury trial of prior malpractice litigation brought by third parties against the defendant doctor is unduly and highly

prejudicial and ordinarily shall result, upon proper objection and motion, in a mistrial.[10] No curative instruction or instructions of which we can conceive, and certainly not as given in this case, is sufficient to undo the taint inflicted upon the proceedings by such conduct or occurrence. In those very rare instances where the existence of prior malpractice actions might be relevant and the proponent desires to mention the matter in opening statement, the *only* proper procedure for determining threshold relevancy is a motion *in limine* made and ruled on initially outside the presence of the jury.

In the case *sub judice*, there can be no doubt that Respondent's trial counsel erred regarding this issue. The record shows that the trial judge informed her that he would rule on the admissibility of evidence of prior malpractice actions against Dr. Lai later in the trial. In response, Respondent's counsel immediately disclosed the information to the jury in her opening statement. We agree with the majority opinion of the Court of Special Appeals when it observed that Respondent's counsel's conduct was "[deliberate] and [wrongful]." We agree also, however, with the dissent when it concluded that courts should not allow this kind of "deliberate and wrongful conduct to benefit the offending party." We agree further with the dissent in the intermediate appellate court when it observed that "[b]y tolerating deliberate wrong-doing like appellee's counsel's statement to the jury in this case, the majority decision simply encourages attorneys to ignore the rules of evidence, and, without fear of significant consequences, seize upon every chance to prejudice the opposing side." The trial judge abused his discretion in not granting Petitioner's motion for a mistrial. The judgment is reversed, and a new trial ordered.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AND TO REMAND THE CASE TO THE CIRCUIT**

---

**10.** *See supra* n. 7.

COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.